### THE JEFFERSON INSURANCE COMPANY *vs.* H. & D. COTHEAL.

Where an insurance was effected upon a *steam saw-mill*, and subsequent to the
policy being underwritten, the *boiler*, which was placed on the outside of the
mill, was enclosed by a frame building and covered over with a roof, *it was
held*, that evidence of the *opinions* of underwriters who had not seen the
premises, and had no particular science in the construction of such buildings,
was not admissible to shew that the risk was materially increased by such ad-
ditional building; whether the risk was thereby increased not being a matter
of skill or science, but simply a question of fact which the jurors were as com-
petent to decide as the witnesses.

Persons of skill are allowed to give their *opinions* in evidence, only in cases
where from the nature of the subject, facts disconnected from such opinions
cannot be so presented to a jury, as to enable them to pass upon the question
with the requisite knowledge and judgment.

An *application* for insurance, describing a building is not a *warranty* unless *in-
serted* in the policy; and *it seems* that a *reference* in the policy to the appli-
cation would not be sufficient to give it the effect of a warranty; the relaxa-
tion of the rule on this subject not extending beyond the *proposals* of under-
writers usually attached to policies, in reference to which it is expressly de-
clared that the policies are made and excepted.

Although the description of premises in the application for insurance may vary
very considerably from the actual state of the property at the time of the loss,
if the variance were not fraudulently intended, and does not in fact affect the
rate of insurance or change the actual risk, the policy will not be avoided; it
is only where there is fraud, or where the underwriter has been misled, that
the policy is affected by a false representation.

NEW-YORK,
May, 1831.

Jefferson Insurance Co.
v.
Cotheal.

Where a policy insured two individuals by name, and then the words *or whom it may concern* were added, and a clause was inserted in the policy that the loss, if any occurred, should be paid to the individuals named, *it was held*, than an action might be maintained in their names, and that they were entitled to recover the whole sum insured, although it appeared that they were owners of but one half of the building insured, and that the other half belonged to a third person, not joined as plaintiff.

ERROR from the superior court of the city of New-York. H. & D. Cotheal brought a suit against the insurance company, on a policy, insuring a steam saw-mill against fire; the suit was transferred from the supreme to the superior court, and there tried. The plaintiffs, whilst engaged in erecting the mill, opened a negotiation for the insurance of it, and presented to the defendants an *application* in these words: " A steam saw-mill on the river Nantikoke, near Vienna, in Maryland; wooden building about 130 feet long by 30 feet broad, with two saw-gates; engine of low pressure; on account of whom it may concern. In case of loss, payment to be made to H. & D. Cotheal." On the 20th November, 1824, the company, by their officers, underwrote a policy, and insured for one year, " H. & D. Cotheal, or whom it may concern, against loss or damage by fire to the amount of five thousand dollars, on a steam saw-mill, built of wood, situate on the river Nantikoke, near Vienna, in the state of Maryland. Loss, if any occurs, to be paid to H. & D. Cotheal of the city of New-York, ($5000 is also insured in the Fulton office,) as described in report No. 193." The policy was renewed in 1825 and again on the 20th November, 1826, for one year. The building of the mill was commenced in June, and finished in December, 1824; it was 132 feet long and 30 feet wide, except in the centre, where for the space of 40 feet, it was 40 feet in width, the engine house constituting a part of the 40 feet square. The boiler and furnace were placed on the outside of the building, adjoining it, and in the summer of 1825, a wooden frame was erected over the same, enclosed, covered with a shew roof of pine boards and attached to the saw-mill by rafters; this building, called the boiler house, was about 30 feet in length, 10 feet in height and 10 feet in width. The plaintiffs proved that it is safer to have the boiler on the outside than underneath the mill, and

NEW-YORK,
May, 1831.

Jefferson Ins-
surance Co.
v.
Cotheal.

one witness testified that in nine cases out of ten, the boilers of steam saw-mills are on the outside, and covered as in this case, and that it is necessary to have the boiler covered to preserve it from rust. The mill was consumed by fire on the 15th May, 1827; the loss exceeded the amount insured.

On the part of the defendants, the *representation* made by the plaintiffs, previous to the insurance in 1824, was produced, and the secretary of the company proved that the last *renewal* of the policy was made on that representation. Attached to it by a wafer, was a paper in the hand writing of a former secretary of the company, in these words: "On a steam saw-mill, built of wood, situate on the river Nantikoke, near Vienna in the state of Maryland," endorsed, "Report 193, H. & D. Cotheal, Nov. 20, 1824—310." These papers originally were separate, although in the same set of pigeon holes, when or by whom attached together, did not appear. *Thomas Franklin*, president of the La Fayette Insurance Company, was called as a witness by the defendants, and on being shewn a diagram of the buildings, was asked whether the erection of the boiler house, as explained by the witnesses, *increased the hazard*, and if so, to what extent, to which he answered that it certainly did, and to such an extent that he would not, as president of a company, with a knowledge of that fact, have taken the risk at all; he stated that he had no particular knowledge as to the proper mode of constructing a steam saw-mill for safety against fire, and never saw the premises in question. James Swords, president of the Washington Fire Insurance Company, testified that the fixing of the rate of insurance, according to the risk, is a *matter of skill*, that he had acquired skill in this particular, having been president of his company for 16 years; stating, however, that he was not acquainted with the premises, and had no knowledge or peculiar science as to the mode of erecting buildings of this kind. The diagram of the premises in controversy being shewn to him, and that the testimony relative to the formation of the buildings being stated to him, he was asked whether a steam saw-mill about 130 feet long, by 30 feet broad, *varied* from such plan or form so as to have increased the risk. The chief justice of the superior court (Jones) overruled the question, and the defendants excepted;

NEW-YORK,
May, 1831.

Jefferson In-
surance Co.
v.
Cotheal.

he was then asked whether from his own knowledge and experience, the erection of the boiler house increased the risk? which question was also overruled, and a like exception taken. He was then shewn the original *application* and the *description* of the premises in the policy, and the defendant's counsel stated to him, from the testimony of the witnesses, the facts touching the boiler and furnace being placed outside, and the building over it erected in addition and, inquired whether such circumstance and additional building would change the risk by increasing the hazard of fire, so that a greater premium, according to the practice of insurance offices, would be asked? which question was also overruled and the defendants excepted. *John Guion*, the secretary of the defendants, was examined as a witness. The counsel for the defendants proposed to ask him whether, knowing the change that had taken place in the interval between the first and last insurance in regard to the erection of the *boiler house*, he would, with such knowledge, have taken the risk at all? the question was overruled, and the defendants excepted. To a question by a juror, whether the premium would have been higher if the building had been double the extent? this witness answered in the negative. He also stated that he was not acquainted with the premises, and had no peculiar knowledge as to the construction of buildings like those in question. It appeared in evidence that one John L. Jaques was originally interested with the plaintiffs in the steam saw-mill, owning one half thereof; that on the 29th May, 1824, he conveyed his interest to John T. Woodhull, by deed, with a defeasance that the same should be void in case Jaques paid to the plaintiffs the sum of $5000, for the payment of which, Woodhull was bound as the surety of Jaques. Jaques had the management of the property until his death, which happened in October, 1825, after which the plaintiffs and Woodhull were considered the owners. Jaques paid no part of the $5000, but the same was paid by Woodhull, who, at the time of the destruction of the mill, was considered the owner of the share belonging to Jaques.

The evidence being closed, the counsel for the defendants insisted that the *representation* made by the plaintiffs in writ-

NEW-YORK, ing, at the time of effecting the insurance, was a *warranty*,
May, 1831. and that the building insured not conforming thereto, the
Jefferson In- warranty was falsified, and prayed the chief justice to direct
surance Co. the jury accordingly ; who, instead thereof, charged them that
v. the representation was not a warranty in the technical sense of
Cotheal. the term, but that under the circumstances of the case, if they
should find that the premises were described otherwise than
they really were at the time of the loss, so that they were in
sured at a less rate than they otherwise would have been if
truly described ; or if they should find that there was any va-
riance from the description by subsequent changes, whereby
the hazard was increased, then the verdict should be for the
defendants. To which opinion and direction the counsel for
the defendants excepted. The jury found a verdict for the
plaintiffs for $5581,25, on which judgment was rendered. The
defendants sued out a writ of error.

   *S. P. Staples,* for the plaintiffs in error. If the clause, *whom
it may concern,* in the policy, should be deemed sufficient to
covert the interest of a person not named, he should have been
joined as a plaintiff. H. & D. Cotheal cannot recover beyond
the interest which they had in the mill at the date of the in-
surance, and at the time of the loss. The provision that if a
loss occured it should be paid to them, does not authorize a
suit in their names for the benefit of Woodhull, the owner of
the moiety of the mill. It is not shewn that the insurance on
Woodhull's share was affected by his request, that he paid any
part of the premium, or had any knowledge of the transaction
previous to the suit. Under a marine policy he would not be
entitled to come in and claim the benefit of insurance thus ef-
fected, Phil. on Ins. 59 ; 1 Marshall 473 ; and sound policy, as
well as the nature of the contract, require that the rule should
be more rigidly enforced in the case of an insurance against fire.
   The reference in the policy to the paper marked No. 193,
makes it a part of the policy, and is equivalent to a *warranty,*
that the property insured was as set forth in that paper ; it is
not a mere *representation.* Park on Ins. 425. 6 T. R. 700.
2 H. Black. 577. 1 Marshall on Ins. 350. Phil. on Ins. 125,
10, If a *warranty,* it must be fully performed, 3 Dow. 255 ;

but if merely a *representation*, the charge to the jury was erroneous, for the variance was such as to amount to a fraud on the company.

The officers of the insurance companies, called by the defendants, should have been permitted to testify to their knowledge and skill in the business of insurance, and to the circumstances tending to increase risk in such cases. The calculation of risks on buildings depends on professional skill; men of skill are called to say whether a vessel is sea-worthy, and what will increase the risks. 2 Starkie's R. 229. Starkie's Ev. Pt. 4, 1175, 76. 1 id. 74. The evidence ought to have been admitted; as ordinary jurors cannot be supposed to be particularly conversant with risks, and unable to form correct opinions on the facts shewn, skilful men are permitted to testify to aid the jury in forming correct conclusions.

*D. Selden*, for defendants in error.

*By the Court*, SUTHERLAND, J.   The questions proposed to be put by the counsel for the defendants to Swords and Guion, were properly excluded by the court below. The general scope and effect of the questions was to shew that the location of the boiler, and the erection of the *boiler house* attached to the saw mill, in the manner in which they have been shown to have been located and erected, produced such a variation from the mill as described in the policy, as materially to increase the risk.

Whether the risk was increased by the supposed alteration in the former construction of the mill, was not a matter of skill or science, so as to justify this description of evidence. The witness, Swords, was asked to give his opinion upon the force and effect of the evidence upon this point, which had been given in the cause, and which was again repeated to him. He was no more competent to decide that question than the jurors were. The map of the premises was exhibited to the jury, and they heard the testimony of the witnesses who had seen the mill, and were acquainted with the usual and proper manner of erecting steam saw mills. What was there in the

NEW-YORK, supposed skill of the witness, acquired as president of an in-
May, 1831. surance office, to enable him to judge more accurately than the
Jefferson Insu- jurors, whether the mill was more exposed to conflagration
rance Co. than it would have been if the boiler and boiler house had
v. been differently located? In my opinion there was nothing;
Cotheal. the question was properly overruled. He was then asked
whether, *from his own knowledge and experience*, the erection
of the boiler house increased the risk; this was also properly
excluded, because the witness had already admitted that he
had no knowledge or experience upon the subject. The secre-
tary of the defendants, John Guion, was then called, and the
counsel proposed to ask him whether the last renewal of the
policy would have been made by him, if he had known of the
change in the building by the erection of the boiler house. It
is obvious that this was merely asking him whether in his
opinion the risk was increased by such erection. His opinion
upon that subject was not legal evidence.

On questions of science, or skill or trade, persons of skill in
those particular departments are allowed to give their opinions
in evidence ; but the rule is confined to cases in which, from
the very nature of the subject, facts disconnected from such
opinions cannot be so presented to a jury as to enable them to
pass upon the question with the requisite knowledge and
judgment. Thus a physician in many cases cannot so ex-
plain to a jury the cause of the death, or other serious injury
of an individual, as to make the jury distinctly perceive the
connection between the cause and the effect. He may there-
fore express an opinion that the wound given, or the poison
administered, produced the death of the deceased ; but in such
a case, the physician must state the facts on which his opinion
is founded. 1 McNally, 329, 335. 8 Mass. R. 371. 9 id.
225. So ship builders may give their opinions as to the sea-
worthiness of a ship, from examining a survey or description of
the vessel made by others, when they were not present. This is
evidently a matter of mechanical skill. Peake's N. P. C. 25,
43. 1 Campb. 117. So an engineer or engraver may give
his opinion on matters belonging to his particular science or
art. 4 T. R. 498. 1 Phil. Ev. 227.

NEW-YORK,
May, 1831.

Jefferson In-
surance Co.
v.
Cotheal.

The cases of *Durnell* v. *Bederly*, 1 Holt's N. P. C. 283, and *Berthon* v. *Loughman*, 2 Stark. N. P. R. 288, are more immediately applicable to this case, and are in direct conflict with each other. In the first case it was held that the opinion of underwriters, whether upon certain facts being communicated to them, they would or would not have insured the particular voyage, could not be received as evidence. That the materiality of the intelligence or rumors which the assured was charged with having suppressed, was a question for the jury, under the circumstances of the case, and ought not to rest upon the opinions of mercantile men. This was ruled by Ch. J. Gibbs, before whom the cause was tried. In the case of *Berthon* v. *Loughman*, Holroyd, justice, permitted a witness, who was conversant with the business of insurance, to give his opinion as a matter of judgment, whether the communication of particular facts would have enhanced the premium. The cases are irreconcileable in principle, and I have no hesitation in expressing my concurrence in the opinion of Ch. J. Gibbs. It supports what I understand to be the true rule on this subject. 3 Stark. Ev. 1176, note. 4 id. 1737, 8.

The chief justice says, "I am of opinion that the evidence of the underwriters who were called to give their opinion of the materiality of rumours, and of the effect they would have had upon the premium, is not admissible evidence. Lord Mansfield and Lord Kenyon discountenanced this evidence of opinion, and I think it ought not to be received. It is the province of a jury, and not of individual underwriters, to decide what facts ought to be communicated. It is not a question of science in which scientific men will mostly think alike, but a question of opinion liable to be governed by fancy, and in which the diversity might be endless."

In the case at bar, whatever might have been the opinion of underwriters, it was shown conclusively by witnesses acquainted with the mode of constructing steam saw-mills, and with this mill in particular, that the boilers are located, not only in the place where they were usually located in such buildings, but where the hazard of fire was much less than though they had been within the body of the mill. Against this evidence the bare opinions of all the underwriters in the city of

New-York, if they had been admitted, ought not to have prevailed with the jury.

The remaining exception was to the charge of the judge. The counsel for the defendants insisted that the representation made by the plaintiffs in writing at the time of affecting the insurance, was a *warranty ;* that the building insured not conforming thereto, the warranty was falsified, and the plaintiffs could not recover. But the chief justice (Jones) charged the jury, that the representation was not a warranty, in the technical sense of the term ; but that under the circumstances of this case, if the jury should find that the premises were described otherwise than they really were at the time of the loss so that they were insured at a less rate than they would have been if they had been truly described, or if the jury should find that there was any variance from the description, by subsequent changes whereby the hazard was increased, then the verdict should be for the defendants.

The doctrine of warranty in the law of insurance is one of great rigor, and frequently operates very harshly upon the assured. A warranty is considered as a condition precedent, and whether material or immaterial, as it regards the risk, must be complied with, before the assured can sustain an action against the underwriters. A warranty, therefore, is never created by construction. It must either appear in express terms, affirmative, or promissory, or must necessarily result from the nature of the contract. 1 Marsh. 347 to 350. Phil. on Ins. 112, 124. It must, therefore, appear on the face of the policy, in order that there may be unequivocal evidence of a stipulation, the non-compliance with which is to have the effect of avoiding the contract. It was once doubted whether it must not be incorporated into the body of the policy ; and it was contended that it was not sufficient for it to be written in the margin. But if it appears on the face of the policy, that is sufficient ; 1 Doug. 11 ; 1 T. R. 343 ; but written instructions, exhibited by the brokers to some of the underwriters for the purpose of effecting insurance, unless inserted in the policy, do not amount to a warranty. This was adjudged by Lord Mansfield, in *Pawson* v. *Watson*, and two other cases upon the same policy. Cowper, 785. Doug. 11, note.

No case has been referred to in which this rule has been relaxed, except in relation to the printed proposals of the underwriters accompanying, and always attached to the policy. It has been held that the conditions specified in those proposals to be performed by the assured are conditions precedent, and are to be construed as warranties incorporated in the policy; 1 H. Bl. 254 ; 2 id. 574 ; 6 T. R. 700, 716 ; Phil. on Ins. 124 ; 1 Marsh. 350 ; but these printed proposals are always referred to by the policy, and it is in express terms declared that the policy is made and accepted in reference to them. They are as much, therefore, a part of the policy as though they were printed or written on its margin. But no case has been given to the court in which any other document has been held to have been so incorporated into the policy, by reference, as to give to its contents the effect of a warranty, or a condition precedent, on the part of the assured. And I am not disposed to lead the way in the extension of this harsh and rigorous doctrine. I do not, however, intend to be understood as giving a definitive opinion upon this point ; it is not necessary for the decision of this cause.

The case of *Pawson* v. *Watson*, Cowper, 785, decides that any representations or instructions not referred to in the policy, are not to be treated as warranties. Indeed, Lord Mansfield, in the conclusion of the case, says that it is the opinion of the court that to make written instructions valid and binding as a warranty, they must be *inserted*, (not referred to,) in the policy. Now it appears to me that we are bound to say, upon the evidence in this case, that the application, or representation upon which the policy was under written, is not referred to in the policy. The reference in the policy is not in terms to this representation, it is to report No. 193 ; and *John Guion* states it as his belief that the representation was not originally attached to, or connected with the report ; they were separate and distinct papers, though in the same set of Pigeon holes. By whom, and when they were connected together, he did not know. It will hardly do to consider a reference to the report made by the officer of the underwriters as a reference to every other paper which that or any other officer of the company may think proper, between the date of the policy

and the day of the trial, to attach to such report; it would give a most sweeping efficacy to the doctrine of reference. The judge therefore was correct in the opinion that the application for insurance in this case was a representation merely, and not a warranty.

It is sufficient if a *representation* be made without fraud, and be not false in any *material* point ; or if it be *substantially*, though not *literally* fulfilled. 1 Marsh. 450, 51. Cowper, 787, Phil. on Ins. 109. 1 T. R. 343. 2 id. 186. 2 Caines, 222. Although the description in the represention may differ very considerably from the actual state of the property insured, if such variation were not *fraudulently* intended, and did not in fact effect the rate of insurance, or change the actual risk, it can scarcely be deemed *material.* A false representation is no breach of the contract; but if material, it avoids the policy, on the ground of fraud, or because the underwriter has been misled by it. But if there is no fraud, and no misleading, the policy is not affected by the false represention. This was, I think, the substance and legal effect of the charge, and it was correct ; and the verdict is clearly supported upon this point by the evidence.

No objection was raised in the court below to the plaintiff's right to sustain this action, and the point ought not now to be taken. But the special [terms of the policy authorize the action to be brought in the names of the plaintiffs, whether they are the beneficial owners of the policy or not. The defendants insure H. & D. Cotheal, *or whom it may concern ;* loss, if any, to be paid *to H. & D. Cotheal.* These are written provisions, and so far as they conflict with the formal printed parts of the policy they must control them. They authorize who ever may be concerned or interested in the policy, to bring their action in the name of H. & D. Cotheal. It is admitted that such would be the effect of these provisions in a marine insurance; but is is contented that there are strong considerations of policy against giving such construction to the terms in a policy against fire. The contract of the parties must have its fair and legitimate construction. At all events, it is not for one of the parties to defeat its operation by urging against it general and remote considerations of public policy.

Judgment affirmed.