### THE MAYOR, &c. OF THE CITY OF NEW-YORK vs. PENTZ.

A party whose property in the city of New-York has been destroyed by an order of the city officers, to prevent the spreading of a conflagration, is entitled to an allowance as damages to the full value of the property destroyed, without any deduction of the amount *insured*.

So he is also intitled to *interest* on the value of the property from the time of its destruction.

The opinions of mere by-standers, that the buildings destroyed would have taken fire and been consumed, had they not been blown up by order of the city officers, are inadmissible in evidence; but whether the opinions of *firemen* and others having particular knowledge and experience in reference to fires, connected with a statement of the facts upon which such opinions were formed at the time, would not be admissible, *quere.*

ERROR from the supreme court. *W. A. F. Pentz* and his partners, a mercantile firm had two buildings blown up by order of the mayor of N. York, in the great fire in that city, in December, 1835, to prevent the spreading of the conflagration; and had their damages assessed, under § 81 of the general act relating to the city of N. York, 2 *R. L.* 368, at $39,476,54. The *buildings* were worth between $29,000 and $30,000, and the *merchan-*

*dize* in the buildings at the time of their destruction, was worth $18,535,82. The Messrs. Pentz were *insured* $10,000 on their merchandize. On the assessment of the damages, the counsel for the corporation insist-

[ *669 ]  ed that the owners of property destroyed *which was *insured*, were not entitled to an allowance of damages for the value of the property insured to the extent of the amount insured, and at all events, that the amount received on such insurance should be deducted; and also insisted that the claimants were not entitled to *interest* on the value of the property from the time of the loss until the taking of the inquisition; upon which propositions the presiding judge charged against him. The counsel for the corporation, after enquiring of each witness examined before the jury, and proving by him that he was present at the fire, asked this question : " Would in your judgment the stores blown up *have taken fire and been destroyed*, had they not been blown up ?" The counsel for the claimants objected to such evidence as inadmissible, and the objection was sustained by the court. The assessment was confirmed by the common pleas of New-York, and the proceedings being removed into the supreme court by *certiorari*, were *affirmed* in that court. This case came before the supreme court and was decided at the same time that the case of *The Mayor, &c. of New-York* v. *Stone and others*, 20 *Wendell*, 139, was brought up and decided. The corporation removed the record into this court by writ of error. The case was argued here by

*G. F. Talman*, for the plaintiffs in error.

*D. Lord, jun.* for the defendants in errror.

*Points for the plaintiffs in error :*

I. The mayor, aldermen, &c. of the city of New-York are not liable to damages for the loss of, or injury to, goods in the buildings destroyed. 1 *Dyer*, 36, *b*. 1 *Dallas*, 363. 2 *Kent's Comm.* 338. Com. Dig. tit. *Pleader*, 3 *M.* 30. 4 *T. R.* 796. *Dwarris on Stat.* 689, 690, 694, 695, 696, 749, 750. *Viner's Ab. Stat. Construction E.* 6, *pl.* 1, 19, 34. 3 *Cowen*, 89. 15 *Johns. R.* 358. 5 *Cowen*, 165.

II. If liable for goods at all, such liability is confined to the damages of the owners and persons having an estate in the buildings, and

[ *670 ]  does not extend to goods held on *consignment, or for sale on commission, nor to goods deposited on storage, nor to advances made on goods held for sale on commission.

III. In estimating the damages of the claimants who had effected insurance on the property destroyed, the amount which they had received, or were entitled to and could receive, from the insurers, ought to have been deducted. *Corlies* v. *City Fire Insurance Co.* 21 *Wendell*, 367:

Albany, December, 1840.—Mayor &c. of N. York v. Pentz.

IV. The court erred in charging the jury that the claimants were entitled to interest on the amount of damages from the time of the fire to the time of the assesement. 5 *Cowen*, 587. 7 *Johns. R.* 112. 15 *Id.* 24. 7 *Wendell*, 178.

V. The evidence offered of the opinion or judgment of persons who were present at the fire, and saw the circumstances thereof, that the buildings would have been destroyed by the fire if not blown up, was improperly excluded. 2 *Stark. R.* 191, 258. 3 *Doug.* 157. 17 *Wendell*, 136. 4 *Cowen*, 355.

*Points of defendants in error :*

I. The recovery of the defendants in error ought not to be diminished by any deduction for their contracts of insurance ; upon which they have received nothing.

II. The purposes of the act being to indemnify the party sustaining damage, the latter must have not only the value of the goods replaced to him, but that value as of the time of the destruction for the public benefit ; consequently interest ought to be allowed from the time of destruction.

After advisement, the following opinion was delivered:

By Senator VERPLANCK. The first question in this case is, whether the recovery of the plaintiffs in the court below for damages sustained by reason of the destruction of their property by the city magistrates according to law, to prevent the spreading of a conflagration, ought not to be lessened by the amount which might be recovered of the underwriters, who are liable for their insurance upon the same *property. The underwriters being clearly liable to the owners for such a loss, this is, [ *671 ] in other words, the question whether the insurers if they had paid it would be entitled to their proportional share of the present recovery. If the underwriters are not entitled to be repaid the amount of damages which they make good, then it must follow that the amount which may have been, or may hereafter be received of them, must so far diminish the total amount of damages, which the owners of the property destroyed have sustained by the act of the magistrates. If they are entitled to such an interest in the recovery, when they had paid their share of the loss, it is manifest that before settling the loss they are equally entitled to be wholly discharged from it by the owner's being made good by the city, under the statute, to the full amount of his loss.

If we admit the very broad sense of the words " *interest*," and " *interested*," in the act under which the recovery is had, as it was maintained in the other cases growing out of the same memorable conflagration, the insur-

ers are evidently comprehended without any regard to their peculiar rights as assurers, subrogated to the rights and claims of those to whom they are or have been responsible. But waiving the consideration of that question until the decision of those cases which depend wholly upon it, this case, I think, may be decided altogether upon the principles of the law of insurance.

It is well settled that the insurer is entitled to be substituted to the rights of the party whom he indemnifies to the extent of the loss he thus assumes. Whatever rights the owner of insured property may have in relation to them, pass to the assurer as much as if the owner had formally assigned those rights.

The doctrine long ago laid down by Lord Chancellor Hardwicke, has often been reasserted and applied. " The person originally sustaining the loss *was* the owner, but after satisfaction made to him, the insurer is ; no doubt, but from that time as to the goods themselves, if restored *in specie* or compensation made for them, the assured stands as trustee for [ *672 ] the insurer in proportion to what he paid." 1 *Vesey.* *R. 98.

From this and similar judicial authorities, our judicious American commentator on the law of insurance, draws the inference that " if the risk of barratry or any misconduct of these persons is insured against, and a loss is paid on that account ; and subsequently the assured recover the damages from the master, there can be no doubt that the insurer would be equitably entitled to the damages so recovered, or to the proportion in which he had made indemnity." 1 *Phillips on Insurance*, 464.

I had some transient doubt whether this principle was not confined (so far as mere authority went) to marine abandonment, so as to rest upon the formal relinquishment of the subject of insurance to the underwriters, with all its contingent and appurtenant rights of property and chances of recovery or indemnity. But I am satisfied that in marine insurance, it is now the settled law that an actual abandonment is not necessary to give the insurers a right to receive the proceeds of claims arising out of losses which they have paid. See cases collected in 1 *Phillips on Ins.* 465, and among the cases in our courts, *Suydam* v. *Marine Insurance Company*, 2 *Johns. R.* 138. *Gracie* v. *N. Y. Ins. Co.* 8 *Id.* 183. So far is this principle of substitution carried, that insurers on freight are now held to be entitled to the benefit of other freight carried, instead of that for which they are made liable. 6 *Taunt. R.* 68. There is nothing in the notion of insurance against fire to distinguish it in this matter from marine risks, and the doctrine has been also applied to life insurance ; for in the case of the insurers of the life of William Pitt, 9 *East, R.* 72, it was held that the insurers who were liable to pay as guarantees in an agreement of indemnity, were entitled to the benefit directly or indirectly of what was paid by the debtor him-

self or by government on his account. As therefore the insurers are entitled to be substituted to the owner in proportion to the loss paid, and succeed to all his rights, it can need no argument to show that the owner himself may recover and retain to the whole amount, whenever he waives that right against his insurers, and look first to other responsibility to make good his loss.

*The allowance of *interest* must generally be regulated by the    [ *673 ]
circumstances of the case. Here the expressed intent of the
statute is to give compensation for the damages sustained by reason of the act of the magistrates in a case of necessity. The allowance of interest is the only mode whereby compensation can be made for that portion of the damages which results from long deprivation of the use and enjoyment of capital. There were no circumstances of delay or laches on the part of the claimants, to lessen their right to such compensation. The only delay was (so far as appears) for the convenience of the defendants in the court below, who were in the mean time (as we know by the legislation on the subject) enabled thus to save the interest to be paid on the funded debt contracted to meet their losses. The destruction by public authority, for public benefit or for that of any citizen, is in the nature of a forced sale, as when lands are taken for a canal or a street. In such case the debt relates back to the time of taking the property and its then value. The debt is then incurred by the state or the neighbourhood, and the interest should begin to run unless the party has himself caused delay.

There is yet a third question, involving an important rule of evidence of frequent application. It was agreed that the defendants below should be considered as having insisted on their right, after enquiring of each witness and proving by him that he was present at the fire, to propose this question : " Would, in your judgment, the stores blown up have taken fire and been destroyed, had they not been blown up ?" Also that this question should have been considered as objected to on behalf of the claimants, and decided by the court to be inadmissible, and such decision excepted to by the counsel for the city. Was it then improper to exclude the evidence of the opinion of persons present, that the damage sustained in consequence of the destruction by order of the magistrates, would have been equally incurred by the progress of the flames ? The broad rule to which the ancient law scarcely knew an exception, is that testimony can relate merely to facts and that the inferences from them are to be made by the jury.

In ordinary *cases the issues being strictly on the existence of    [ *674 ]
facts capable of being proved or disproved by direct evidence,
opinion as well as hearsay, must be excluded. But this general rule has been broken in upon by the admission of various classes of exceptions, all resting on the common grounds of necessity. Such necessity is allowed to

exist when the facts in issue are not themselves accessible by evidence, being either future probabilities or mere contingencies, or else actual facts, but not within positive knowledge : all of these must of necessity be judged of, only from other proved facts known generally to accompany or to indicate those in question : as for instance, when the facts to be ascertained are inferred from some rule of art, or science, or observed law of nature thus proved. The knowledge by which the existence of the unknown fact is inferred from the one proved may not fall within the range of ordinary information, but must be proved by professional or experienced witnesses having peculiar skill in some art, trade or science relating to the subject. Thus the fact of certain appearances in a dead body having been proved, the subsequent question whether such appearances indicate poison, is wholly out of the power of the best informed men to determine, unless they had made such subject a previous study. Again, the market value of an article at a given time, upon the allowance of damages on which a jury has to pass, is frequently a question, such as dealers in that article can alone decide. There it is a matter of necessity to call in the experienced or instructed opinion of such witnesses. No proof of the naked state of facts as to a ship after a storm could perhaps enable a landsman, however intelligent, to judge of those necessities which are so often to be inquired into in marine contracts. Thus also in an action for negligently steering a ship, as in *Malton* v. *Nesbit,* 1 *Carr. & Payne,* 76, mere proof of the naked facts could not enable a jury of landsmen to draw any inference ; and experienced nautical men are called in to prove whether facts of that kind amount to unjustifiable negligence. Opinion is admitted when a jury is incompetent to infer without the aid of greater skill than their own, as to the *probable existence of the facts to be ascertained, or the likeli-      [ *675 ] hood of their occurring from the facts actually proved before them. Indeed it would be more logically accurate to say that mere opinion, even of men, professional or expert, is not admissible as such : but that facts having been proved, men skilled in such matters may be admitted to prove the existence of other more general facts or laws of nature, or the course of business, as the case may be, so as to enable the jury to form an inference for themselves. Thus the existence of certain appearances in the dead body having been proved, the chemist testifies that such appearances invariably or generally indicate the operation of some powerful chemical agent. His scientific opinion is in fact his testimony to a law of nature. All these are testimonies to general facts which the jury can ascertain in no other way, and which when proved afford them the means of drawing their own conclusions from the whole mass of testimony taken together.

The same reason of absolute necessity has compelled the admission of evidence of opinion in certain cases where the poverty of human language

makes it absolutely impossible to separate in words the minute and transient facts observed by the witnesses from the inference as to some other fact, irresistibly connected with the former in his own mind.    Testimony as to hand writing, I think, resolves itself into this, as no words can fully convey to others the minute particularities on which such judgment is founded.    So too, in questions of identity as to men, to goods, horses, &c. though the facts on which such judgment is founded may be partially stated, still the judgment or opinion is admitted.    In these cases the witness swears as to the present conviction of his own mind as to an actual fact, though deduced from circumstances which cannot be made palpable to others.    It is often difficult to draw a line of distinction between testimony to simple facts, and the statement of such immediate and conclusive inferences as the witness forms in his mind.

Beyond this, when you let in the mere expression of opinion as to probabilities and contingencies, you have nothing to check the influence of partiality or prejudice, or other *worse motive, or to enable a      [ *676 ] court or jury to discriminate between ignorant or purchased opinion, and that which is fair and enlightened.    The differing opinions of physicians, arists and other experts, at trial, is of constant observation ; yet there the known rules of art, laws of science, and the knowledge and observation of life, afford salutary checks against careless or partial testimony. To admit mere opinion of by-standers as to probabilities, is going much beyond the policy of our law, and losing sight of that distinction between admissibility and credibility which our jurisprudence has always maintained.

In the present case, it seems to me wholly inadmissible, that each witness should, as a matter of right, be allowed to give his opinion to the jury as to mere contingent probabilities.    Whether a building was in the direction of the flames or exposed to their ravages, or appeared about to take fire, these and similar circumstances were present facts, and the legitimate subject of testimony.    The rest is mere opinion.    There might be particular knowledge and experience of *firemen or builders ;* there might be the expression of an opinion connected with the statement of facts upon which it was formed at the time ; and if particular evidence of that nature had been excluded, it might *perhaps* have formed good cause of exception upon its own special grounds and reasons.    The inclination of my own mind is to extend the competence and admissibility of testimony as far as can be done consistently with the principles of our law, and I am therefore desirous to confine my own decision in the present case to the denial of the unqualified claim of right to present as testimony the mere opinion of any witness who was present, as to the probabilities of what might have occurred had such an event not been anticipated by the act of the city authority.    As a general rule, I think that the doctrine maintained by Chief Justices Mansfield, Kenyon and Gibbs,

and our own supreme court, 7 *Wendell*, 72, rejecting mere inferences of opinion drawn by witnesses from the facts proved by others, extends and applies likewise to the admissibility of mere naked opinion as to probable contingencies founded upon facts formerly seen by the witnesses themselves. *In the language of those decisions, " This is mere opinion, and not evidence."

[ *677 ]

It has been suggested since the argument of this case, that it may be doubted whether the two questions which have been last considered are fairly before this court, or were so before the supreme court, upon proceedings brought up by *certiorari*. As, however, they have been fully argued before us without objection on either side, and as the conclusion to which I have come leaves the decision of the court below undisturbed, I have thought it right to state in full the reasons of these conclusions on which I must rest my decision of the present cause, in the absence of all argument or objection as to the extent of our appellate authority and that of the supreme court. If that doubt be well founded, which I have not yet examined, the result must be the same, and the judgment of the supreme court should be affirmed.

The CHANCELLOR generally expressed his concurrence in the views of Senator Verplanck.

Senator ROOT thought that the allowance of *interest* was improper.

On the question being put *Shall this judgment be reversed? three* members of the court voted in the *affirmative*, and *nineteen* in the *negative*. Whereupon the judgment of the supreme court was AFFIRMED.