## DU BOIS v. CAMDEN FIRE INS. ASS'N et al.

### Civ. A. No. 8726.

District Court, E. D. New York.

Feb. 19, 1948.

---

[7] Rule 54(c) of the Federal Rules of Civil Procedure, 28 U.SC.A following section 723c

Charles H. Stoll, of New York City (Morris Rochman and Aaron L. Rochman, both of Hicksville, of counsel), for plaintiff.

Powers, Kaplan & Berger, of New York City (Samuel A. Berger and Irwin Leibowitz, both of New York City, of counsel), for defendants insurance companies.

BYERS, District Judge.

This is a plaintiff's motion to strike from the answer the first, second and third defenses, pursuant to Rule 12, and for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The action is based on four fire insurance policies issued by the defendant companies, to recover for a fire loss which may be deemed to have been fixed at the sum of $43,564.14.

The defenses sought to be stricken assert the failure of the plaintiff to disclose facts (constructive fraud) in connection with the issuance of the policies, knowledge of which it is said would have caused the defendants to refuse to underwrite the risk.

The question for decision is whether the defendants have pleaded facts as to which they should be permitted to go to trial.

The plaintiff acquired three of the predecessor policies to those in suit, on November 7, 1946, in connection with his purchase of certain improved real estate at Hauppauge, Smithtown, Suffolk County, New York; he gave a purchase money mortgage to the sellers in the sum of $25,000 on account of the total price of $41,500, and paid to the vendors the then unearned premiums upon the following policies:

| | |
|---|---|
| The Camden Fire Insurance Association | $37,468.00 |
| Globe and Rutgers Fire Insurance Co. | 15,000.00 |
| The Home Insurance Co. | 17,489.50 |
| | $69,957.50 |

These were one-year policies, expiring January 8, 1947, and through brokers they were duly transferred to the plaintiff according to customary practice in such matters, with the standard mortgagee clause indorsed in favor of the purchase mortgagees (Trustees).

Prior to the expiration date, renewal policies were issued in the name of the plaintiff, containing the standard mortgagee clause, and these new policies are the ones in suit, as to the first three defendants.

On March 1, 1947, the plaintiff procured a fire insurance policy from Commercial Union Assurance Company, covering personal property on the same premises, in the sum of $5,000.

On March 12, 1947, a fire destroyed the main dwelling and partially destroyed other property covered by the policies, and the loss was later determined to be represented by the said figure of $43,564.14.

It appears that the first three companies, in accordance with the mortgage clause, paid to the Trustee mortgagees the amount of the said mortgage which was due at the time of the fire, although disclaiming liability as insurers, and thereby became assignees of the mortgage.

That transaction is the basis for the third defense and counterclaim pleaded separately by each of those defendants, which seems to be to the effect that the

policies would not have been issued with the mortgagee clause attached, and therefore liability to the mortgagees would not have arisen, except for the wilful concealment by the plaintiff of the matters later to be stated, whereby these companies took over the mortgage and were subrogated to the rights of the mortgagees to assert the alleged infirmity of the policies.

In other words, the legal effect of the third defense and counterclaim is understood to be the assertion of another aspect of the first defense, which is that the policies were void for concealment of material facts and circumstances.

The second defense is highly technical, i. e., that the action was begun prematurely, some twelve days before the signing of his examination conducted by the defendants, and therefore contrary to the terms of the policy. If this were all that required attention, the motion could be speedily determined.

The motion to strike involves paragraphs 24 to 35; 36 to 43; 44 to 51; and 52 to 77, all inclusive, and these paragraphs embrace but one important question which is comprehended in the first and third separate defenses, the latter being also designated as a counterclaim to the extent of the amount paid by the first three companies named to acquire the mortgage, namely, $23,793.75, which was the amount unpaid thereon at the date of acquisition.

The four companies rely upon the assertion that, by their terms, the policies shall be void if "whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto".

Since the breach is said to be of a condition upon which liability was assumed, it will be seen that the foregoing language can be urged to constitute only a wilful concealment before the loss, of a material fact or circumstance respecting the insurance itself, since neither the subject of it, which was structures (and contents), nor the plaintiff's interest therein, is brought into question; and no false swearing on his part is alleged.

The prior losses and collections of insurance thereon were as follows:

(1) 1940, residence in Hempstead, Long Island, and contents, partially damaged as result of fire originating in cellar in area of furnace and hot water heater.

Collection ........... $1,800.00

(2) 1943, same property involved, but this loss was of a barn and contents, not covered by insurance.

Airplane instruments and radio equipment covered by policy on plane then being repaired elsewhere.

Collection .............$ 350.00

(3) 1944. Rural property in Vermont, namely, house, barn and outbuildings. Large barn containing 100 tons of hay, and other outbuildings and contents destroyed (i. e. $6,075.00 and $785.00).

Collection ........... $6,860.00

This property was held by plaintiff in a name not his true one, Allen Strow, which he says was adopted for business purposes, i.e. that of recording skating records.

(4) 1945. Destruction by fire at Hickville Aviation Country Club of airplane while being repaired. Plaintiff was standing by while mechanic was effecting the repair.

Collection ........... $4,585.09

There were also two non-fire losses, one in 1941, $24.75, for windstorm damage to an airplane, and the other for theft of equipment amounting to $275.15.

It appears from an examination of the plaintiff by the companies in 1947, that he is and since 1939 has been, a maker and distributor of phonograph records, and does business under the trade-name of "Skatin Toons". In that connection he adopted the name Allen Strow for reasons which cannot be said to be devoid of plausibility. The acquisition and operation of the Vermont farm property in connection with the dairy business, in that name so far as the record title is concerned, and the proofs of loss under which insurance was collected, are more difficult to understand.

In connection with the acquisition of the policies affecting this Smithtown property, no disclosure was made of the plaintiff's previous experiences in being visited by these fires, and the collection of insurance moneys thereunder. This is alleged to have constituted wilful concealment of material facts and circumstances.

It should be added, if it has not been previously made clear, that he was not requested in any manner by or on behalf of the defendant companies to make any statement or representation, oral or written, concerning such or any other matters whatever.

The position of the defendants is that, by reason of the nature of the anticipated relationship between one seeking fire insurance protection, and the insurer, he was expected:

* (a) To know that the previous fire history would affect the willingness of the companies to become insurers; and

(b) That hence he was required to volunteer the information, at the risk of rendering the insurance void.

If those propositions are valid, it will be seen that the companies rested under no duty of inquiry or investigation, or even of seeking a representation apart from the application for the policies to be implied from the fact that, as an incident to the closing of title to the real estate, a broker requested the transfer of the existing policies to the new owner, and also the new mortgagee coverage.

Whether there is lurking in the pleadings an issue concerning the legal aspect of the writing of new policies as of January 8, 1947, I find it difficult to discover. As to the original policies, paragraphs 28 and 30 of the Answer clearly assert that the plaintiff requested and procured the vesting of the existing policies in himself. The counterclaim is addressed to the renewal policies, and paragraph 53, for instance, merely states that one of them was issued on January 3, 1947, and paragraphs 65 and 72 are to the like effect, as to the other two. Also paragraphs 28 and 30 are realleged in behalf of the counterclaim, and the Reply seems not to deny any of the foregoing. Whether that means that the renewal policies are alleged to have been issued by these three companies, as an unsolicited act so far as the plaintiff is concerned, is not clear. The name of P. Walker Morrison, Inc., the broker who procured the transfer of the original policies, appears in the affidavits filed in opposition to the motion under Rule 56, but whether the renewal policies are alleged to have owed their existence to the efforts of that broker (and, if so, whether it was acting for the insurer or the insured) is quite obscure.

I should suppose that this would be an important question for the following reason:

It is fairly to be inferred from the details concerning the plaintiff's prior insurance experience as set forth in those affidavits, that these companies had access to their own source of information touching the payment of insurance losses of all kinds, since those affidavits refer to some such matters not comprehended in the plaintiff's affidavit in support of his motion. If that is indeed the fact, there would seem to be a basis for pleading an estoppel, on the theory that if knowledge was accessible to the defendants of circumstances upon which they now rely, and they failed to avail themselves of it between November 7, 1946, and January 8, 1947, they should not now be heard to assert that they were beguiled into accepting substantial sums of money as premiums for committing themselves as underwriters of an unacceptable risk.

Because of doubt as to the meaning of the pleadings and motion papers in that connection, the present decision cannot deal with that aspect of the case.

The Answer pleads, and the opposing affidavits circumstantially allege, that the plaintiff wilfully concealed from the defendants the fact that he had suffered prior losses from various causes and had collected insurance thereon, which were material facts and circumstances which rendered "the issuance of fire insurance to the plaintiff * * * an undesirable proposition to the defendant insurance companies."

That the plaintiff owed the duty of disclosure of these matters to the defendants.

That these · defendants would have refused to vest the interest in the original policies, and to issue the new ones, if as to the former they had known of the plaintiff's prior losses, etc., and that the concealment was intentional, fraudulent, and material.

The theory of the motion is that the foregoing fails to set forth a defense, and to state facts sufficient to constitute a counterclaim.

The whole matter probably comes down to the right of the defendants to go to the jury on the question of the materiality of the failure of the plaintiff to volunteer information concerning his prior fire losses. Conceivably a jury might be impressed by such testimony, and if that is so, the Court would not be justified in substituting its own considerable skepticism on the subject as a reason for granting the motion.

The plaintiff cites Dinnerman v. Boston Insurance Co., 181 Misc. 703 [42 N.Y.S.2d 89] to sustain his argument, and it does so to this extent: a motion was granted to strike so much of an Answer as alleged failure to disclose three previous fires of an incendiary nature, and the collection of insurance losses so occasioned. The Court says that there was no affirmative duty on the part of the assured when applying for the policy, to reveal her previous fires. However, it does not appear that, in connection with the motion, affidavits such as those of the underwriters in the case at bar were before the Court. The Judge seems to have decided the question solely as one of law, probably because there was not presented to him the equivalent of a motion for summary judgment under Rule 56.

Sebring v. Fidelity-Phenix Fire Insurance Co., 255 N.Y. 382 [174 N.E. 761, 762] decided by the Court of Appeals in 1931, involves a failure to disclose a record of arson on the part of the insured, known to one who procured a policy for himself and the other, "as interest may appear", pending the transfer of title after a contract had been made. The Court reversed a judgment for plaintiff claiming under the policy, and directed that evidence be received at a new trial concerning the facts so known. The opinion says:

"We think reversible error was thereby committed (the ruling excluding the evidence). Defendant was entitled to prove, if it could, that the facts relating to Hubbard (the vendee) were material, that they were concealed, and that the concealment was fraudulent.

"The question of the materiality of a representation or concealment is ordinarily for the jury (Citation). The usual test relates to the effect which knowledge of the fact would have on the making of the contract. That test is complete if such knowledge would influence the parties in making it. If the underwriter, with full information, would have refused to accept the risk, then the concealment is material. The undisclosed fact need not be of such a nature as to have increased the risk or contributed to any loss or damage. Vance on Insurance (2d Ed.) p. 347; Jefferson Ins. Co. v. Cotheal, 7 Wend. 72, 22 Am.Dec. 567."

This and the following passages in the opinion must of course be read against the setting in which they were uttered, which differs from this by a wide margin, concerning the nature of the concealment.

 I find it hard to believe that anything in this plaintiff's prior record, save the use of a fictitious name in connection with the Vermont property, reveals anything even questionable concerning his earlier fire losses, much less a fraudulent concealment thereof, or that the new policies would not have been written if the facts had been elaborately laid bare. But it is also true that I cannot in effect declare that the affidavits of the underwriters to the contrary must be ignored. They are submitted as to so much of the motion as seeks summary judgment under Rule 56. But if that were to be granted, it would of necessity be consequent upon striking so much of the Answers as are assailed under Rule 12. It must therefore be denied.

Since it cannot be said, as to the first and third counterclaims, that they are legally innocuous, it follows that, as to them, the motion also must be denied.

 As to the second counterclaim, I am of the opinion that the plaintiff's ex-

amination was closed to all intents and purposes, prior to the filing of the complaint, and that the action was therefore not premature. Springfield Fire & Marine Insurance Co. v. J. T. Wilson Co., 6 Cir., 67 F.2d 426, at page 428, and as to that the motion is granted.

Settle order in accordance with the foregoing.