Jones C. J.
This case comes before us on a demurrer to the defendants’ fourth plea. The action is upon a policy of insurance which contains a special agreement, that if the vessel upon a regular survey, should be thereby declared unseaworthy, by rea *93 son of her being unsound or rotten, then the assurors should not be bound to pay the subscription upon that policy.
The declaration which is for a total loss by the perils of the sea, sets forth that the vessel was compelled, during the progress of her outward voyage, to put into the nearest port for the purpose of refitting and repairing, and that Norfolk in the state of Virginia, was the place where she sought refuge.
The defendants by their fourth plea aver that a regular survey of the tenor set forth in the plea, was held upon the brig at the port of necesity ; and upon this they rely for their defence under the special agreement. To this plea the plaintiff demurs, and for cause of demurrer, exhibits six special grounds of exception. The first objection is, that the plea does not admit or deny that the vessel was compelled by necesity arising from sea-damage, to put into Norfolk to refit.
The only material ingredients of the defence under the agreement are, 1st. The fact of a regular surrey. 2d. The finding or declaration of the surveyors that the brig was so rotten or unsound as to render her unseaworthy, or incapable to proceed on the voyage. Both these facts are intended to be averred by this plea in the language of the survey, and this was all that the rules of pleading could require of the pleader. The construction or legal effect of the survey, and how far it does find and declare the vessel to be unseaworthy or incapable of prosecuting her voyage by means of her being rotten or unsound, within the meaning of the clause in the policy, is a question of law, and upon which we are to adjudicate. But it is a question which goes to the competency of the survey, as a defence, and not to the sufficiency of the plea, within the forms and rules of pleading.
Seeing that the fact of a regular survey having been had upon the vessel, is distinctly averred, and that the contents of the survey and the adjudication of the surveyors are given in the plea, no valid objection can be taken to it by demurrer, unless the objection goes to the sufficiency of the matters of the survey, or the adjudication of the surveyors, to satisfy the terms of the agreement and sustain the defence. The causes which induced or compelled the master to put into the port of necessity cannot be material. Whether the defects *94 or decay of the brig became so palpable and obvious as to jeopardize the safety of the cargo and crew, or the apparent cause of the leaks was the damage arising from the action of the winds and waves upon her, matters not. She was for some justifiable and sufficient cause obliged to seek a port: there she underwent a survey. It is that survey which is to determine the condition of the vessel and the cause of her distress. The first ground of demurrer is consequently untenable.
The fourth and fifth special causes must, for similar reasons, be disregarded. The survey is not offered as evidence to prove the unseaworthiness of the brig, it is pleaded as the adjudication or declaration of the surveyors, which the parties by their own compact have made conclusive on the question of seaworthiness. It has the same force and effect upon the rights of the plaintiffs, under the contract as an award of arbitrators has upon the parties to the submission, in regard to the matters embraced in the submission. If the surveyors substantiably declare the vessel to be so rotten as to be unseaworthy, or incapable of prosecuting the voyage, it will be sufficient for the insurers to produce and prove the survey to establish their defence. The objection, therefore, that the survey is not legal evidence to prove unseaworthiness, and cannot for that reason be pleaded in bar to the action, but is matter of evidence merely for the jury, which is the substance of the fourth cause of demurrer, is wholly irrelevant. And the fifth ground of demurrer, which is, that the plea, which does not aver the brig to be rotton, but avers only that the survey declares her to be rotten, so far from showing any fault in the pleading, affirms its validity : for it is to the survey that the defendant was by the contract to refer for the fact of rottenness. The parties have substituted the opinion and declaration of the surveyors for proof. And if that document pronounces the vessel unsound or rotten and condemns her as unfit from that cause for sea, the decision is decisive. No other evidence is necessary to prove the fact, and none can be received to contradict or disprove the truth of the document.
The sixth cause of demurrer objects to the plea, because it respects the state of the brig at the time of the survey, and does *95 not relate, in any respect, to her condition at the time of her departure from New-York. The answer is, that the plea conforms to the survey, and the objection of course, if it has any force, must be to the declaration of the surveyors, as relating to the time of the examination and survey of the vessel, instead of referring to the antecedent period of her sailing upon the voyage, for which the insurance was made. It is only necessary to state the objection in this form to show its weakness and utter irrelevancy. The agreement of the parties necessarily refers to a survey of the vessel after her departure upon her voyage; and the surveyors can only judge of the causes of her distress from the condition in which they find her upon the survey and at the time of her examination. It is not possible for them to determine or declare her condition at any antecedent period of her existence. When the survey takes place shortly after her departure, or in an early stage of her voyage, and she is then found to be in a state of decay, the probability of her unsoundness at the commencement of her voyage, approaches Very nearly, if it does not actually' amount to certainty. For it may be safely predicated of such a vessel, that her defects could not be of recent origin, and that no inherent cause of decay could operate so rapidly as to reduce her to such a disabled state of unsoundness in so short a period of time. But in long voyages, it is possible that a vessel not materially unsound at the time of her departure, but infected with the seeds of disease, or in any incipient state of decay, may, by constant exposure at seasons and in climates which favor and hasten the progress of the disease, become disabled and be rendered incapable of pursuing her voyage without reparation. But such a state of decay comes equally within the special provision of the policy, whether it arises upon the voyage, or existed before it began, and equally entitles the insurer to the benefits of its protection.
The best safeguard for the insurer against the mischief, was seen to consist in referring the cause of the disability exclusively to the opinion of those who are called to examine her at the time of the disaster; and when she is in her disabled condition, they alone can judge correctly of her soundness or decay, and deter *96 mine whether her inability is owing to her inherent defects, or to the injuries she received from the perils of the seas. Their judgment of her actual state and condition, if they examine with fixity» and act impartially, cannot err-and as the master who is the agent of the assured, and acts for him, generally nominates the surveyors, and superintends their operations, there can be no room for any improper influence or undue practice on the part of the underwriters, and the opinion they express in the report they make, will generally be as favorable to the assured, as the truth of the fact will warrant. It is proper, therefore, that it should be held conclusive upon them; but to make it available, it must be held conclusive, not only of the fact of unsoundness and decay at the time of the survey, but that she was incapable when she sailed, of performing the voyage, or became so afterwards by rottenness solely. And if the agreement of the parties is to have any efficacy, such a survey must bring the case within its provisions^
It would be impossible to trace the decay to its source, or to ascertain its origin, or when it first became the cause of the ship’s disability. The surveyors enter into no such speculations or conjectural opinion, for such it must always be, but they confine themselves to the actual injuries or defects they discover upon the survey, and the causes, whether decay or accident and recent disaster to which those injuries or defects are to be ascribed. The agreement does not require that the survey should declare the vessel to have been unsound or rotten at the commencement of the voyage, to exempt the insurer from the pajunent of his subscription. It is sufficient that she be upon a regular survey thereby declared unseaworthy or incapable of prosecuting her voyage by reason, or on account of her being unsound or rotten, to protect the insurer from the loss. The surveyors are to report her actual condition as they find it; and if her disability is found by the survey to be owing to the unsound and rotten state of her hull, and to that cause solely, the insurers, if there is any efficacy in the contract, must be discharged from the liability, however recent or remote the origin of the disease may be.
The objection, therefore, that the survey, or the plea refers to the time of the survey, and not to the commencement of the voy *97 age, has no solidity. It probably was suggested by some of the early decisions on the clause in question, when its true character was not justly appreciated, and its legal construction had not yet been judicially settled. If this plea, then, be vicious, it must be because it is obnoxious to the exception taken to it by the third special cause of demurrer—upon the general ground that the survey it recites, does not sufficiently adjudge or declare the vessel to be unseaworthy or incapable of prosecuting her voyage, by reason of her being unsound or rotten, to satisfy the terms of the agreement.
The objection raised by the third cause of demurrer is two fold ; first, that the plea attempts to draw the finding of matters of fact from the jury; and second, that it refers to the Court, to find the fact of seaworthiness or unseaworthiuess by inference from the facts stated in the plea, which inference the jury ought to draw.
The first branch of this exception, is the repetition, in a different form of the objection, that the survey and its contents are not legal evidence of the unseaworthiness of the vessel: and the answer to it is, that the parties have by the agreement, withdrawn the finding upon the fact of seaworthiness from the jury, and substituted the survey and the declaration of the surveyors in the place of such finding, and made it conclusive upon their rights. If, therefore, it be a grievance, that the finding of that matter of fact is drawn from the jury, they owe it to their own act and voluntary compact with the insurers, and they have no right to complain. But the other branch of the exception objects further, that the plea in its present form requires the Court to find the fact of seaworthiness or unseaworthiness, by inference from the facts, or evidence stated in the plea. The plea states the substance of the survey, and reposes upon it as a conclusive bar. The point of the objection, then, must be, that the report of the surveyors details the defects and unsound condition of the vessel with the cause of them, without declaring her unseaworthy, or incapable of prosecuting her voyage, in consequence of those defects. That these details constitute the evidence from which the unseaworthiness or inability may be inferred, but which *98 inference the surveyors have forborne to draw. That they were required by the terms and spirit of the agreement to declare the fact,, as the result of their own judgment upon the condition of the vessel, or the report could not conclude the parties; and that when this question is left open, it is the province of the jury and not of the Court to decide it;' This involves the merits of the general ohjectioa, that the survey does not satisfy the terms of the special clause in the policy; and if it was well founded, it would be fatal.
It was doubtless the intention of the parties, that the surveyors, to whom they referred the question, should exercise their judgment upon the ability of the vessel in the condition they found her, to prosecute her voyage ; and how far her disability was the consequence of defect from decay, or her unsound and rotten condition, and that such judgment or opinion should be manifested by the report they should make : but they did not intend to prescribe the form which such adjudication should take, or the terms in which the opinion of the surveyors should be declared. The substance of the declaration required by the agreement is, that the vessel is found so unsound or rotten as to be incapable, from those causes, to continue her voyage. The two facts of actual disability to proceed, and decay from rottenness as the cause of it, must concur to bring her within the meaning of the provision ; but the terms in which the opinions of the surveyors upon those two points are expressed, are immaterial. It is sufficient if they, in any form of expression, declare an opinion upon them so intelligibly as to satisfy the understanding of the meaning they intend to convey.
The clause in question is of modern origin. It is peculiar to us and our sister States. We are to look therefore to the decisions of our own Courts for a judicial exposition of its import. In the early discussions to which it gave rise, the leading questions seem to have been, whether the survey was a conclusive bar to the action, or only prima facie evidence of the unseaworthiness of the vessel which might be repelled by other proof,—and whether the survey at an intermediate port is conclusive evidence of original unsoundness or relates to the time it is made, and admits *99 of proof of seaworthiness at the commencement of the risk, so as to neutralize its effect upon the contract. But without entering into the history of those discussions it is sufficient to observe that those questions were settled by the Supreme Court of the United States in the case of Dorr v. The Pacific Insurance Co. [7 Wheaton 582,] where the points came distinctly before the Court and received its decision. The case arose upon a special verdict on a policy of insurance on the ship Ilolofem, which contained the clause now under consideration. The jury found that the ship was seaworthy at the time of the commencement of the risk: but that in the course of the voyage she met with violent gales, in consequence of which she sprung a leak and was compelled to bear away for New Providence, where, upon a survey held upon her, she was found to be in a leaky state, and the surveyors, having caused a part of her ceiling to be stripped off, discovered her to be in a very decayed condition ; and they certified that they were of opinion that she was altogether unworthy of being repaired, and ought to be condemned as being unsafe and unfit ever to go to sea again. She was condemned accordingly and sold.
It was contended that the survey was not conclusive evidence of the unsoundness of the vessel at the time of her sailing upon the voyage, but left that point open to further inquiry; and that the special verdict had negatived the presumption of unsoundness arising from the survey, and neutralized its effect as a bar. But the Court held that the words of the contract expressly look forward to a future event, and contemplate two objects;—first, that a state of rottenness ascertained at any stage of the voyage should be conclusive evidence of original unsoundness: and secondly, that the determination of that fact by means of a regular survey should be received as conclusive evidence between the parties. It was further objected to the survey in that case, that it certifies the existence of other causes of loss besides the decayed state of the vessel; and it was .admitted by the Court that if the vessel be declared unseaworthy for any additional cause besides her being unsound and rotten, the survey would not avail the defendant as a bar. But they held that in the case before them, decay was *100 exhibited as the mortal disease, and every thing else was either inducement or consequence. That the springing a leak was the consequence of that state of decay which weakened her whole fabric, and her being unworthy of repairs or unfit to go to sea, was no additional cause of condemnation, but the mode in which the disease produced her destruction. The views of the Court upon the latter point, show the case then before them in that aspect of it, to bear a strong resemblance to this, and we may deduce from the reasoning applied to that cause, principles peculiarly applicable to this. The conclusion drawn by the surveyors from the decayed state of that vessel was, that she was unworthy of being repaired, and as a consequence of that opinion they advised her condemnation, as unsafe and unfit ever to go to sea again. Their own sentence, however, was, that she was unworthy of being repaired. The same sentence, in nearly the same words, is contained in the survey now under our consideration.
Two cases have recently occurred, in which the opinion of our Supreme Court has been expressed upon the construction and legal effect of the clause in question, and the requisites of the survey to which it refers. [Brandegee v. The Nat. Ins. Co. 20 John. R. 328.—Griswold v. The Nat. Ins. Co. 3 Cowen’s R. 96.]
The opinion of the Supreme Court, in the cases to which I have just adverted, as I understand its decisions, is in accordance with that expressed by the Supreme Court of 'the United States. In those cases, the defence was taken by plea, and the form of pleading the. survey, was calculated and intended to test its legal effect: for it was set up and relied upon by the pleader as a decisive bar to the plaintiff’s action. And the plaintiff’s counsel for that cause demurred, insisting that the clause in the policy to which the plea referred, did not make the survey conclusive evidence of the fact of the vessel being rotten, and if it was not conclusive, but prima facie evidence merely, it could not be pleaded in bar. In the case of Brandegee v. The National Insurance Co., where a plea in that form was first interposed, the ground was distinctly taken by the defendant’s conn *101 sel, that the survey was conclusive, and by the plaintiff’s, that it was prima facie evidence merely: and upon that point the question turned, whether it was of itself a defence and could be pleaded in bar, or was matter of evidence only, and must be given in evidence. It was admitted in that case, that the survey, to be available as a bar to the action, must be regular, and must declare the inability of the vessel to further prosecute her voyage to be, because she is unsound or rotten, and for that cause solely. But it was contended that if the survey amounts to a declaration by the surveyors that the ship was unseaworthy by reason of her being unsound or rotten, or that she was incapable of pursuing her voyage from that cause, it is decisive upon the right of the parties. No particular form of expression is required, nor is it essential for the surveyors formally to adjudge or declare her to be unseaworthy or incapable of prosecuting her voyage by reason of rottenness : it is sufficient that they substantially pronounce her disability, and show the cause of it to be defects by rot, and not injuries from disaster. The language in which the declaration is made, and mode of expressing the opinions they give, are not material.
Let the efficacy of the survey under consideration be tested by by these rules. The surveyors specify numerous defects, discovered by them in their survey, all which they ascribe solely to rot, and they superadd the declaration that the whole of her bending streaks on both sides of the quarter, main and lower decks, the waist and wales were so defective by rot, that they would necessarily require to be shifted; and they estimate that the probable cost of the repairs of the hull of the brig, so declared to be rotten, would amount to $3000, or thereabouts; and declare their opinion to be, that she was unworthy of repairs and would not sell for the amount of her bills, and they recommended that she should be sold. How could language more clearly and forcibly express the disabled condition of the vessel, or the cause of her distress 1 She is described as being so rotten, that the probable expense of the repairs of her hull so declared to be rotten would be about $3000; and an opinion is expressed that she was unworthy of repairs, and ought to be sold. Where is the escape from the con *102 clusion that she was unseaworthy, and wholly incapable of pro-on her voyage, and that rottenness was the sole cause of her disability?
It is said the surveyors have not expressly declared her unseaworthy or incapable of proceeding on her voyage. They have not used those precise terms, but the expressions they have employed are tantamount to that declaration. A vessel whose hull is so rotten that she is unworthy of repair, cannot be seaworthy, nor capable in her crippled and disabled condition of proceeding on her voyage ; and when the surveyors after examining h er, instead of advising the repair, recommend a sale of her, they emphatically pronounce her unfit to proceed on her voyage, and in ascribing her inability to rottenness solely, they bring her fully within the provision of the clause in question.
It was said, that if the cause of the condemnation be the great expense of repairs as well as the unsound state of the ship, the survey for the same reason will not be a bar. But the mixed causes of condemnation must be disclosed by the survey itself, and cannot be shown by extrinsic evidence. The survey is its own test of the ground of the declaration it contains. If it appears that unsoundness proceeding from decay was the sole cause of inability, the survey is a bar, otherwise not. Tiglman J. held, in the case of Garagues v. Cox, that if the survey upon the vessel should say that she was unsound, and for that cause was condemned and should say no more, the plaintiff would be barred. It is usual, however, to state the particular parts which are found to be rotten or decayed, and it is always advisable to do so, because it is more satisfactory to exhibit, on the face of the record the reason for the conclusion of the surveyors. And for that reason the same enlightened Judge in the subsequent case of Steinmets v The U. S. Ins. Co. [2 S. and R. 297,] observes that “it would not be proper to “ say in general terms that the vessel was rotten, but that the “ defects ought to be stated.” But whether the surveyors content themselves with the general statement of rottenness as they may do,- or use the more correct form of specifying the particulars of the decay, it is perfectly clear from all the cases, that if they ascribe the inability of the ship to her unsound and rotten condition *103 solely, or if they specify her defects and attribute each to decay, and then pronounce her irreparable or unworthy of repair, or unfit to proceed on her voyage, without stating any other reason for their opinion, the survey will be conclusive upon the right of the parties; and the plaintiff will not be at liberty to repel it, by proof of the soundness or sufficiency of the ship for the voyage, or, by showing that she in truth became innavigable or unworthy of repair from other causes ; for it is well settled that the effect of the agreement in the policy is to render the survey conclusive upon the parties.
When, therefore, the surveyors in the case at bar, enumeate the long list of defects in the hull of the brig specified in the survey, and attribute all of them to rottenness and decay, and give the probable estimate of the cost of the repairs of the hull so declared to be rotten, at a sum equal to the whole value of the brig as estimated, without mentioning or suggesting any other reason for the expe> of her reparation than the extensive repairs required ky her unsound condition; and when they follow up this description of defect, and estimate if the expense of repairs, with the opinion that the brig is unworthy of repair, and recommend the sale of her; we are not at liberty to refer the opinion or recommendation of the surveyors to any other cause than the rottenness of .the vessel to which the report is confined ; nor can we suppose or intend the estimate of the cost of the requisite repairs, to proceed upon any unusual or peculiar difficulty or expense incident to the reparation of vessels in that particular port, the survey taking no notice of any such special circumstance, but placing the estimate upon the general ground of an ordinary repair of the decayed and rotten hull of the brig.
Nor indeed could it avail the plaintiff to show the fact, supposing it to exist, that the difficulty of repairs at Norfolk, the port of necessity, and the great expense attending them, were amongst the reasons why the brig was unworthy of repair, and would not when repaired, sell for the "amount of her bills- For conceding such to be the actual state of the ease, still the sole cause of her being irreparable or unworthy of repair was the unsound and rotten condition of her hull, and not the disaster which she had *104 encountered on her voyage. She was at Norfolk and in want of repair of to enable her to proceed on her voyage. These repairs roust be done, to her whatever the cost may be, or she cannot go on. And if rottenness was the cause which induced the ne- . „ , , . .. .. of that repair, the vessel was literally unable to prosecute her voyage by reason of her rottenness. It may, perhaps, beat the option of the assured, in such cases, to incur the expense of the repairs, if the vessel was in fact reparable, and proceed with her on her voyage, or to break up the voyage and abandon the vessel as not worth repairing. But the capability of the vessel of repair is not in such cases the criterion ; for a vessel unseaworthy from decay, may, nevertheless, be reparable. The expense of her repair will vary with the extent of her defects, and the facilities or difficulty of obtaining workmen and materials at the port of necessity. The true test is her inability to proceed by reason of her defects. And if she is in that condition, sx> that the voyage be rightfully broken up for that cause, and the survey upon her so declare the facts to be, the casus fcederis has occurred, =nd the underwriter is absolved from his obligation to pay his subscription.
If, then, it be conceded that the survey now before us, either expressly or by necessary implication admits the vessel to be reparable, and declares her unworthy of repair by reason of her unsoundness or decay, and from the difficulty and expense of procuring workmen and materials for her repairs at the port of Norfolk, still, as her repairs were indispensable, to enable her to proceed on her voyage, and the rottenness of her hull is the sole cause to which the necessity for them is ascribed-by the survey, she was in her actual condition unseaworthy, and incapable of prosecuting her voyage by reason of rottenness ; and the Insurers cannot be chargeable with the loss which ensued from the abandonment and sale of her.
It was strenuously urged that the plea admits the facts set forth in the declaration, and consequently admits that the disability of the brig to pursue her voyage was partly owing to recent injuries by the perils of the sea: But it is not true that the plea admits the causes of loss to be such as the plaintiff in his declaration alleges them to be. It admits the fact that the vessel did put into *105 the port of necessity for the purpose of refitting and repairing and that it was wholly impossible to repair and refit her, as red in the declaration, but it refers to the survey as conclusive proof of the causes of her disability, and as a bar to the plaintiff’s recovery. And the utmost extent of the implied admission"of the causes which induced or compelled her to put into port for repairs, is, that the apparrent causes of that necessity were those which the declaration states ; but that implied admission is to be taken with this qualification, that the pleader refers to the survey as unfolding the true state of the facts and showing the real cause of the disaster. The plea has reference to the declaration^ and admits the substantial facts which it would be incumbent on the plaintiff to prove, to entitle him in the first instance to recover, and then sets up the survey under the special agreement in the policy as a bar to that recovery ; but no.allegation or averment is admitted which is repugnant to the bar created by the survey. The plaintiff cannot control or evade the force and effect which his own agreement gives to the survey, by his averments in his declaration, any more than he can by evidence at the trial. When therefore the survey declares the vessel unseaworthy or incapable of proceeding by reason of rottenness, the plaintiff is precluded by his own contract from ascribing her Inability to any other cause ; and a plea which sets up the survey as a bar, will not be an admission of any averment in the declaration, of any cause of disability, inconsistent with the report of the surveyors.
If the case be stated from the allegations of the plaintiff, which the plea admits, and the additional facts appearing in the survey which the plea sets up and asserts, it will stand thus.—The brig having, by means apparently, (and, as was supposed at the time) of the perils and dangers of the seas, and the force and violence of the winds and waves, become leaky and greatly injured, broken, and damaged, it became, and was expedient, and necessary, to put into the nearest and most convenient port for the purpose of refitting and repairing her; and she did accordingly, from that necessity, put into the port of Norfolk, which was the nearest and most convenient port for that purpose; but that it became and was wholly impossible to repair and refit the said brig, be *106 cause, upon her arrival at the port of Norfolk, and in reference to the voyage, and the state and condition of the brig at the time of the said arrival there, a regular survey was held upon her at Norfolk; and upon such survey, it was thereby found and declared, that the numerous defects from rot, specified in the survey, and the extreme decay from the rottenness of her hull, and those causes solely, rendered her unworthy of repairs.
Who can read this statement, which is faithfully abstracted from the pleadings, without the full impression upon his mind, of the opinion and declaration of the surveyors, that the brig was in effect unseaworlhy, and incapable of continuing her voyage, in consequence of the defects in her hull, proceeding from rot 1 I acknowledge that my understanding is so thoroughly convinced of the import of the declaration, that I am unable to attach any other sense to the expressions they have employed. And it seems to be impossible to come to any other conclusion, from the facts they state. To understand the full force of the report, we must view it in connexion with the disabled state of the brig to which it refers, and the causes of the survey upon her. She was not at her port of ■ departure, undergoing a survey to satisfy the insurers of her ability to perform the voyage on which she was about to sail. She was in a port of necessity, to which her disabled condition and avowed inability to proceed on her voyage, had compelled her to come, for the purpose of repairing and refitting, so as to enable her to resume and complete her voyage. It was to ascertain the extent and the causes of her disease, and the practicability and expediency of repairs, that the survey was held upon her.
Let it not be objected that the survey is to explain itself, and can derive no aid from extrinsic facts. We do not go out of the record for the facts which we connect with the report: they appear upon the face of the pleadings.. The plaintiff in his declaration, in effect avers them, and the plea admits them. The survey has an immediate and necessary connection with them, and refers to them. The first and most material fact thus taken from the history of the brig, as it appears upon the record, is the actual inability of the vessel at her arrival at Norfolk, and *107 when the survey was held upon her to prosecute her voyage in her then present state and condition. This fact is distinctly averred by the plaintiff, and its existence is the only cause that could justify the deviation from the track of the voyage to put into an intermediate port, not permitted by the policy. And the surveyors act upon that assumption in making the survey, and must be understood as speaking in reference to it, when they express the opinion in the report, and recommend the sale of the vessel, and consequent termination of the voyage. The survey was called and held upon her as a vessel already reduced to an incapacity to pursue her voyage ; and the chief purpose of the survey was to investigate and report the cause of her inability, and to recommend and prescribe the course to be pursued by the master.
When, therefore, they discovered the extensive defects of her hull from rot, and came to the conclusion, that the expense of the repairs which that rottenness rendered necessary, would exceed her value when repaired; and when they declared their opinion to be, that she was not worthy of repair, and therefore recommend the sale of her, did they not in effect declare her to be unseaworthy, and incapable of proceeding on her voyage, from the rottenness of her hull? When they reported a vessel which was in a disabled condition, and from inability to proceed on the voyage had put into port for repairs, to be unworthy of repairs, was not the report tantamount to a declaration that she was unseaworthy? Did/hot the declaration that she was unworthy of repairs, necessarily assume and include the fact, that she stood in need of repairs to make her seaworthy, or to enable her to prosecute her voyage ? And when they recommend the sale' of her because she was unworthy of repair, did they not virtually declare her incapable of her proceeding on her voyage in the state she then was, without first undergoing reparation ?
If either of these propositions is well founded, the survey amounts to a declaration that the brig was unseaworthy, or inca-' pable of proceeding on the voyage, and it must be conceded that'the rotteness of her hull is the sole cause to which the survey ascribes her disability.
*108 I am satisfied, therefore, that ihc exceptions taken to theplea, in this case, are not well founded; and there must be judgment for the defendants on the demurrer.

Judgment for the defendants on the demurrer.

[A. S. Rogers, Att’y for the plffs. G. W. Strong, Att'y for the defts.]