Ranney, J.,
delivered the opinion of the court:
This suit was brought on two policies of insurance, dated and issued March 13, 1851. By the first, numbered 74, three buildings, situated in Hendrysburg, Belmont county, and a stock of goods in one of them, were insured for one year, from noon of that day;. and by the other, numbered 75, a lot of unmanufactured tobacco, stored in one of the buildings, was insured for four months.
Upon trial, in the district court of the county, a verdict was found, *395 and judgment given for defendant in error, upon both policies ; to-reverse which, this writ is prosecuted. The record presents an unusual number of interesting questions, ^arising upon exceptions taken to the rulings and opinions of that court, which have-been argued here at much length, and with great industry and research, by counsel on both sides. As these questions relate to a. contract of great importance, and very general use, I shall endeavor to state, as clearly as I may be able to do, the conclusions to which the court has come, founded, as we think, upon settled principles, without attempting to canvass, at length, the wilderness of adjudged cases cited in argument, or the conflicting opinions of jurists and elementary writers, from which confusion, rather than certainty- and precision, has very often resulted.
The assignments of error, nine in number, may be reduced to three clases:
First. It is claimed the court erred in ruling out evidence' offered by counsel for the plaintiff in error, and in admitting evidence objected to by them.
Second. In refusing to charge the jury upon several points, as requested, and in the charge, as given.
Third. In refusing to grant a new trial.
1. It was proved that one of the buildings insured, had, shortly before the risk was taken, been on fire; and, at the time, was suspected, by the insured, to have been fired by an incendiary. This-fact was not communicated to the agent of the company, when the-policy was issued, and was claimed to have been a material fact, which the insured was bound to have disclosed.
The first evidence offered, and rejected, consisted of the depositions of sundry witnesses engaged in the biisiness of insurance, in Belmont and other counties, to show a local usage, amongst insurers-doing business there, to reject such application; or, if taken, to charge a higher premium. When this evidence is carefully examined, it will be found that it did not even tend to prove a local usage-differing from the general custom, and amounts to nothing more than an expression of the opinions of the witnesses, that the fact not communicated was material to the risk. But assuming all that. *is claimed for it, we are still of opinion it was not admissible. If the fact not communicated was material, the insurer was-allowed to prove it, and had the full benefit of it, to the jury. If it was not material, it could not be made so by any resolution or de~ *396 ■termination of insurance agents, the existence of which was only known to themselves, and not pretended to have been communicated to the insured, or of such general notoriety as to afford any pre■sumption of knowledge on his part. If he is bound, at his peril, to recollect and communicate all such facts as a court and j ury may -afterward think were material to the risk, it would seem to be requiring enough, without compelling him also to anticipate that •others, having no such necessary relation, have been made material, by those with whom he deals. The general principles of law he is taken to know, and he has a right to have the contract interpreted .and enforced by them, unaffected by any local custom, unless it plainly appears that such custom was understood by the parties, and the contract made in reference to it. Chase v. Washburn, 1 Ohio St. 252.
2. Depositions were also offered, and ruled out, containing the .■opinions of several witnesses engaged in the business of insurance, that this was a fact material to the risk and would have influenced the judgment of a prudent underwriter in determining whether he •should assume it or not..
It is not to be denied, that some difference of opinion has obtained upon this question. In the leading case of Carter v. Boehm, 3 Burr. 1905, an insurance broker had testified that, in his opinion, ■certain letters ought to have been shown, or the contents disclosed; .and if they had, the policy would not have been underwritten. In respect to this testimony, Lord Mansfield said:
11 Great stress had been laid upon the opinion of the broker. But we all think the jury ought not to pay the least regard to it. It is mere opinion, which is not evidence. It is opinion after an -event. It is opinion, without the least foundation from any precedent or usage. It is opinion, which, if ^rightly formed, could only be drawn from the same premises from which the court and jury were to determine the case; and, therefore, it is irrelevant and improper in the mouth of a witness.”
So, Gibbs, C. J., in Dunell v. Bederly (Holt, 285): “ It is my opinion, that the evidence of the underwriters, who were called to give their opinion of the materiality of the rumors, and the effect they would have had upon the premium, is not admissible. It is not a question of science, upon which scientific men mostly think alike, but a question of opinion, liable to be governed by fancy, and in which the diversity might be endless.”
*397 Such testimony was, however, admitted by Mr. Chief JusticeHolroyd, in Berthon v. Loughman, 2 Stark. 258, and by Lord Tenterden, in Rickards v. Murdock, 10 B. & C. 527, but these cases were-overruled by Lord Denman and his associates, in Campbell v. Rickards, 5 B. & Ad. 840, and the ruling of Lord Mansfield and Chief Justice Gibbs followed and approved.
In the case of the Jefferson Insurance Company v. Catheal, 7 Wend. 78, the question at issue was whether the risk had been increased by the erection of a boiler-house adjoining a steam saw-mill covered by the insurance, and it was held that the opinions of witnesses were not admissible; but even if the opinions of witnesses, conversant with the construction and management of such mills, were inadmissible in evidence, yet that persons who had no other knowledge of the subject than that derived from their business as-insurers, could not be allowed either to say what they thought on this point, or whether they would have insured the mill at the same-premium, after the boiler-house was erected, as before.
In this conflict of opinion, there is no resource left but to return to-the principle upon which such evidence is ever received. The general rule certainly is, that facts only can be given in evidence, and the necessary and natural deduction from them must be made by the jury. In' everything pertaining to the ordinary and common knowledge of mankind, ^jurors are. supposed to be competent, and, indeed, peculiarly qualified to determine the experienced connection between cause and effect, and to draw the proper conclusion from the facts before them. But they are selected with no-view to their knowledge of particular services, trades, and professions, requiring a course of previous study and preparation. As-questions connected with these will very often arise, and as the law deprives the jury of no reliable means for ascertaining the truth,, it allows them to be aided, in making the proper application, by the opinions of witnesses possessing peculiar skill in those particular departments. But this is only permitted where the nature of the-question at issue is such that the -jury are incompetent to draw their own conclusions from the facts, without the aid of persons-whose skill or knowledge is superior to their own, and such as inexperienced persons are unlikely to prove capable of forming a correct judgment upon, without such assistance. Fish v. Dodge, 4 Denio, 311.
The general rule and the exception are alike applicable to every *398 possible class of cases; and whether the one or the other shall be .•applied—whether the jury shall be left to make the proper deduction from each fact proved, or may be aided by the opinions of exports, must, in every case, depend upon the nature of the question involved. If the connection between the fact and its experienced consequences belongs to the ordinary information of men, the .general rule must govern; if not, and it lies within the limits of some art or science, the exception applies, and it may be proved by the opinions of persons skilled in it. The application of the •doctrine to cases of insurance is as obvious and easy as to any other. A fact concealed or not communicated, is claimed to have been material to the risk assumed; because, from its probable or necessary results, it increased the chances of loss. The question is, did it so increase them? If the answer ■can be given from ordinary experience and knowledge, the jury must respond to it unaided; if the effects of such a cause are only known to persons of skill, and are to *be determined only by •the application of some principle of science or art, such persons may give the results of their own investigation and experience to the jury in the way of opinions, the better to enable them to come to a correct conclusion.
In cases of life and marine insurance, such testimony may often become indispensable. If the fact concealed were some bodily infirmity, or some alleged defect in a ship, it must certainly be competent to allow physicians to state their opinions whether the infirmity was calculated to shorten the life of the insured, in the one case; or experienced mariners or ship-carpenters, whether the defect was such as to endanger the ship, in the other. But to call upon an insurance broker, or lawyer, merchant, or clerk, acting as the .agent or officer' of some insurance company, and ignorant of the very first principles'of medicine or navigation, for either purpose, would seem to me altogether inadmissible, however well acquainted he might be with the details of his own particular business.
In cases of fire insurance, it is more difficult to see when a ne■cessity for such evidence could ever arise; but I am not prepared to say that it might not: and if it did, no doubt it should be governed ■by the same principles.
It is, therefore, impossible to say that the opinions of witnesses :are never to be received in determining the materiality of facts not ■disclosed; much less can it be said that they are to be received in *399 all cases. In each case it must depend upon the nature of the inquiry; and, as the question relates to the admissibility of the evidence, must be determined by the court, with reference to the distinction wo have endeavored to indicate. This distinction, Mr. Smith, in his learned note to Carter v. Boehm (1 Smith’s Leading Cases, 283), thinks will reconcile all the English cases, and it is the one adopted by some of the elementary writers. 1 Greenl. Ev., sec. 441; 2 Phil, oil Ins. 653, sec. 8.
' There was nothing in the question raised here, requiring either science or skill to determine. The effect that a *previ°u.s fire might have upon the safety of the building thereafter, could be as well understood by one man as another. Every man of sense would know that it would depend entirely upon the cause of the fire. If the building had been fired by an undiscovered incendiary, it might be reasonably inferred that the motive which prompted the act, might load to a repetition of the attempt; but if it had been ignited by a stroke of lightning, or a spark from a burning, building, or any other temporary or accidental cause, which no longer continued, nobody in his senses would súpose the building in greater peril from the fact in the future. The jury wore entirely competent to draw their own conclusions, and the evidence was therefore inadmissible and properly rejected.
3. It is also assigned for error, that the court erred in rejecting the policy of the Portage Mutual Insurance Company, and the deposition of David McCartney, designed to show a previous insurance upon the property, not notified to the agent of this company. But as this assignment has not been noticed in the argument, I shall not notice it here, further than to say we are satisfied the ruling of the court was correct.
It is next claimed that the court erred in admitting the testimony of the agent, to prove that he knew of the existence of a certain incumbrance upon the property, at the time he issued the policies. As the correctness of this must depend upon the view of the law, taken in the charge to the jury, we shall not attempt to consider it in this connection, but pass on to that branch of the case.
II. Policy No. 14 was issued upon a written application, drawn up by the agent of the company, and signed by the defendant in error, by his agent, Wilson James. We make no question that it was the paper of the defendant, and that he is legally responsible for its contents. This paper is headed, “ Survey.” (“ To be signed *400 by the applicant.”) The balance of it consists of questions and answers, thirteen in number; most of them having relation to the-character of the structures, materials of which they are composed, distance *ff om other buildings, etc. ■ The 8th and 13th are as-follows: “Ashes. How are they disposed of ? ” Answer: “Thrown, out.” “What incumbrance, if any, is now on said property?” Answer: “None; attachment on goods released by bond.” In relation to the ashes, the evidence tended to prove, that for some time-before the policy was underwritten, some of the ashes had been taken by the family of the defendant’s clerk, who occupied the store-building, and placed in a box in the kitchen, for the purpose of breaking water fo wash with; and what was not wanted for this-purpose was thrown out: That the uniform practice had been to wet them thoroughly when they were placed in the box for this purpose, until the evening before the fire, to which allusion has been made, when some were put in by his wife, who forgot to wet them; and in the night the box was foiind to be on fire, -and some-part of the wood-work in the room adjacent to it.
As to incumbrances, it was proved that the goods, and lots upon which the buildings were situated, had been taken by a writ of attachment, at the suit of a creditor, the agent of the company acting as one of the attorneys, which was pending at the time the policy was underwritten, the goods having been previously released by bond, but the lien still remaining upon the lots. The agent testified, “that he knew of the existence of the said proceeding in attachment at the time said survey was made out, and made the entry, ‘ attachment on goods released by bond,’ from his own knowledge that, at the time, he did not think of the fact that the attachment, on the lots was still existing, and not released, or he would have entered it, or have communicated the fact to James, and with his consent have entered it.”
Following a general reference to the property insured, on the-face of the policy, the following language is used: “For a more particular description of said premises, see survey No. 74, furnished by the insured, which is hereby made a part of this policy." It is also declared, “that this policy is made and accepted, in reference to the conditions hereto annexed, *which are to be used and resorted to, in order to explain the rights and obligations of the parties hereto, in all cases not herein specially provided far.” Thet 1st, 4th, and 17th conditions are as follows:
*401 1st Condition. “ Applications for insurance should be in writing,, and specify the construction and materials of the building to be-insured, or containing the property to be insured; by whom occupied ; whether as a private dwelling or how otherwise; its situation with respect to contiguous buildings, and their construction and material; and whether any manufactory is carried on within or about it, and in relation to insurance on goods,” etc.
4th Condition. “ A false description, by the assured, of a build ing or of its contents . . . shall render absolutely void a policy issued upon such description. But the office will be responsible for surveys and valuations made by its agents.”
ITtii Condition. “When a policy is made and issued upon a survey and description of certain property, such survey and description shall be taken and deemed to be a part and portion of' such policy, and warranty on the part of the assured ”
Upon this state of the facts, counsel or the plaintiff m error contended that the 8th and I3th questions and answers constituted a part of the contract between the parties, and warranty on the part of the assured. That the answers were not true, and therefore the-policy had never attached, and was void. But the court instructed the jury, in substance, that only so much of the written application as related to the situation and description of the property insured, was by the policy made warranty; and that the answers to the-questions referred to, were to be treated as representations, which the parties had made material, and therefore their materiality was: not a question for the jury. That if the representation as to the ashes was substantially untrue, if the habit was to deposit the ashes in the building insured, the policy was void, whether the representation was made, * intentionally or by mistake, and whether the applicant knew what was done with the ashes or not; but if the ashes were generally and usually thrown out, and only deposited in the building occasionally, and for special or extraordinary purposes, or accidentally, it would not avoid the policy. That the attachment proceedings showed an incumbrance on the buildings insured; but if the agent of the company, at the time he issued the policy, knew of the existence of this incumbrance, then 1¡he policy was not, on that account, void, for he was not misled by it.
In respect to the alleged concealment of the previous fire, the jury was instructed, that its materiality was a question exclusively for them, in determining which it was proper to consider the true cause of the fire, and not the belief of Harmer as to the cause; and *402 if they were satisfied it was material, and not communicated or ¡known to the agent of the underwriter at the time the policy was issued, the policy was void, whether the concealment resulted from fraud, accident, or mistake.
■ At the hazard of incurring the imputation of prolixity, I have thus stated at length the view of the court below, with the facts to which they were applied, in order that our own may be the more clearly understood. They involve, as will be seen, the doctrines of warranty, misrepresentation, and concealment, as applied in the law of insurance. The consequences of each, in marine insui’ance, may be regarded as well settled by the great current of authority. Every undertaking of the assured, in the body of the policy, amounting to a warranty, whether material to the risk or not, must be strictly and literally true; and every representation of a material fact which might have influenced the judgment of the underwriter, in assuming the risk, must be substantially true. For the same reason, the assured is bound to communicate every material fact within his knowledge not known or presumed to be known to the underwriter, whether inquired for or not; and a failure in either particular, although it might have arisen from mistake, accident, or foregetfulness, is attended *with the rigorous consequences that the policy never attaches and is void for the reason that the risk assumed is not the one intended to be assumed by the parties. Much of this doctrine is peculiar to this contract. In other contracts, it is enough that warranties even are substantially performed ;. and they can not, in general, be impeached for misrepresentation or concealment, unless fraud was intended.
Fire insurance sprung up at a later period; and the courts finding a system of rules already constructed for marine risks, at hnee transferred them to this new species of insurance.
Almost all the diversity of opinion to be found in the later cases has resulted from a growing conviction with most courts, that a ¡substantial difference exists in the nature and essential elements of the contract of marine and fire insurance, which renders some of ■these rules inapplicable to the latter, and from a disinclination with others to depart from the strict rules applied to marine insurance.
1. The distinction between a'warranty and a representation is -easily comprehended; the difficulty only arises in its application to particular cases. An express warranty is a stipulation inserted *403 in writing on the face of the policy, on the literal truth or fulfillment of which the validity of the entire contract depends. Angell on Ins. 169, sec. 140; Arn. on Ins. 577; 6 Wend. 488; 2 Hall, 100.
It is, however, considered to be on the face of the policy, although contained in another paper, if distinctly referred to in it and expressly made part of the contract between the parties. 3 Kent Com. 450; 7 Wend. 270; 5 Hill, 188; 7 Ib. 122. Asimple reference is not enough. As stated by Bronson, J., in Burrit v. Saratoga Insurance Co., 5 Hill, 190: “An express warranty is always a part of the contract, and a reference in the policy to a survey or other paper will not make such a paper a part of the contract so as to change, what would otherwise be a mere representation, into a warranty.”
Mr. Arnold (1 Arn. on Ins. 489) thus defines a representation: ■*“A verbal or written statement made by the assured to the underwriter, before the subscription of the policy, as to the existence •of some fact, or state of facts, tending to induce the underwriter more readily to assume the risk, by diminishing the estimate he would otherwise have formed of it.”
Angelí (sec. 147) says: “ There is no difficulty in distinguishing .a representation from a warranty; the former being a part of the preliminary proceedings which propose a contract, and the latter a part of the contract as it has been completed. , A misrepresentation renders the contract void on the ground of fraud; a noncompliance with a warranty is an express breach of the contract” The one may induce an error in regard to the subject of the contract, and the other is a stipulation of the contract itself. 2 Duer on Ins. 751; 8 Pet. 557.
But it is by no means as clear as is assumed by the plaintiff’s counsel, that what is in its nature preliminary, and designed for the information of the underwriter, will so change its character as not to be satisfied by a substantial compliance, from the fact that it is, by appropriate words in the policy, made a part of it. Nor is it by any means certain that the distinction taken by the district court was not altogether immaterial. If the whole of the application is incorporated into the policy, it is done by the written clause referring to it for a more particular description, which does not ■declare the effect of making it a part of the contract. There is nothing in the printed conditions annexed to the policy requiring the applicant to state how the ashes are disposed of, or the state *404 of the title; and it is manifest they both belong appropriately to the preliminary information which the underwriter has a right to require to guide his judgment, and are not so connected with his undertaking as necessarily to constitute conditions upon which the contract is founded. The conditions, certainly, must be construed together, and the warranty provided for in the seventeenth can not be made more extensive, or cover more particulars, than arorequired to be inserted in the application by the first. In *Houghton v. The Manufacturers’ Insurance Co., 8 Met. 114, the application and representations were held to be legally adopted' and embodied in the contract as fully and to the same effect as if they had been recited and set forth at large in the policy. And yet the court held that they were to be regarded as having the-legal effect of representations, rather than warranties, as understood in the law of marine insurance, though partaking, in some measure, of the character of both. That they were like representations in requiring that the facts stated should be substantially complied with, but not like warranties in requiring an exact and! literal compliance.
In the Farmers’ Insurance and Loan Company v. Snyder, 16 Wend. 481, the application and survey were adjudged to be a part of the contract; but tjie chancellor, in delivering the opinion of the-court of errors, after adverting to the marine rule, said: “ I have-doubts whether the principle of construing every matter of mere-description contained in the body of the policy, although not material to the risk, into,an express warranty, which is to be literally complied with, should be applied with the same strictness, to fire-policies.” And in Alston v. The Mechanics’ Insurance Company, 4 Hill, 330, he arrived at the conclusion that it was sufficient that they were substantially and materially true.
In the late ease of Glendale Manufacturing Company v. Protection Insurance Company, 21 Conn. 32, the court of errors say: “We are by no means confident that representations in surveys, preceding the issuing of fire policies, extending, as they do, to the present and future condition of the property about to be insured, have been considered as technical warranties, to be true to the letter, for a long series of years, and- not rather as representations, to be, at the time and thereafter, substantially exact and true. Nor are we certain, that a mere reference to these representations made in the body of the policy, in order to explain the rights and obligations of the *405 parties, does, necessarily, change their character from representations to warranties.” “ If this vital change in what is only preliminary, is to be brought *about by a mere reference in the body of the policy to the survey, then there is a principle of the law of marine insurance being applied to policies of a different character, which must, ere long, present questions of unusual interest •and importance.” “ This would be a very broad principle of law, ■of great importance, demanding mature and careful consideration, before we sanction it, and one which wo are not called upon to decide in this case.”
But suppose the answers to these questions to be construed as warranties; still, the law was laid down as favorably to the plaintiff 'in error, as some courts and judges of the highest respectability would require. To give the statement as to the ashes any applicaoation to the facts in evidence, it must be regarded as affirming the previous habit of disposing of them. If construed as imposing an •obligation in the future only, it was not pretended it had been •violated. The jury was told, if the habit had been otherwise than to throw them out, the policy was yoid; although leaving some of them in the building occasionally for special or extraordinary purposes, or accidentally, would not have that effect. Now, wherever .a strict and literal compliance with the terms of warranties has been 'held necessary, no artificial rule has been applied in arriving at the meaning of the parties. Angell on Ins., sec. 155. In Shaw v. Robberds, 6 Ad. & Ellis, 75, one of the conditions of insurance was, that the building (a barn) should not “be made use of to stow or warehouse any hazardous goods.” Lord Tenterden, C. J., held, that this must be understood as forbidding only the habitual use of fire, or the ordinary deposit of hazardous goods, and not their ■occasional introduction for a temporary purpose connected with the ■occupation of the premises. And he instructed the jury that the introduction of a tar-barrel, for the purpose of repairing the building, was no breach of the condition, notwithstanding it led to its destruction. This doctrine was again applied by the same learned judge to a similar state of facts, in Dobson v. Sotherby, 1 M. & Mark. 90, with the remark, that if the company intended to stipulate, not merely that no fire or hazardous goods should be habitually *kept on the premises, but that -none should be ever introduced upon them, they might have expressed themselves to that *406 effect: and to the same purpose is the ruling of Ch. J. Tindal, in Prin v. Reid, 6 Man. & Gran. 1.
The statement as to incumbrances wras certainly untrue; but tne agent of the underwriter was fully advised of all the facts, wrote-the answer from his own knowledge, and would have stated it truly, if the truth had occurred to him at the moment, without making the slightest difference in the terms of his insurance; while it does-not appear that the agent of the assured knew anything about it. It is not doubted that this would be a perfect answer to a clause of warranty introduced into any contract, although it might be in writing. Schuyler v. Russ, 2 Caine, 202; Long on Sales, 202. But it is claimed that a stipulation introduced into a contract of insurance can not be so restrained, and that parol evidence is not admissible to show such a state of facts. Many cases may be found to-support the position; but those judges who have gone farthest, and applied it with most rigor, have been compelled to admit that no-satisfactory reason can be assigned for the distinction. Jennings v. Chenango Insurance Co., 2 Denio, 79, Jewett, J. On the other hand,. Chief Justice Nelson, in Turley v. North American Insurance Co., 25 Wend. 374, in speaking of the contract of insurance, expresses the opinion that “ there is no more reason for claiming k strict literal compliance with its tprms than in ordinary contracts. Full-legal effect should always be given to it for the purpose of guarding-the company against fraud or imposition; beyond this we would be sacrificing substance to form—following words rather than ideas.”' Stephens, in his Nisi Prius, vol. 3, p. 2081,upon the authority of New Castle Insurance Co. v. Macmoran, 3 Dow, 255, says: “ It seems that even in case of warranty, it would be a good answer that the-mistake or misrepresentation was to be attributed solely to'the insurers themselves or their agent.” And, finally, the Supreme Court of Pennsylvania, in the case of Bruner v. Howard Fire Insurance Co., determined during the present year and not yet reported, has. decided that “ parol evidence *is admissible to show that the-description of property insured, annexed to a policy, though signed by the insured, was drawn up by the agents of the insurer; that they knew all about the property from verbal description by the insured and from actual survey; and that therefore omissions and errors therein were those of such agents, and hot of the insured, notwithstanding a provision in the policy that the description should *407 be tabeen as a part thereof, and as a warranty on the part of the insured." 2 Am. Law Reg. 510.
I have thus stated enough to induce a doubt, at least, whether the very confident assertion of counsel that all the stipulations of the contract, on the part of the assured, are to be deemed warranties, requiring literal performance, and not in any way to be affected by parol evidence, is universally acquiesced in by the courts of other states. It does not, however, in this case, become necessary to decide any of these questions, or to express a decided opinion upon them, as we are of opinion the answers in question were not incorporated into the contract, or made part of the conditions upon which it is founded. When these questions properly arise, it will undoubtedly be worthy of serious consideration, whether the general principles of law, as applied to other contracts, are not altogether sufficient to protect the rights and interests of both the parties in this; and whether justice is best promoted in allowing either party to escape from its obligations for causes other than those that might have affected his interests.
2. No part of the application or survey, it is perfectly settled belongs to the contract, unless it is expressly made part of it by unequivocal language appearing on the face of the policy. “ A warranty is never created by construction. It must either appear in express terms, affirmative or promissory, or must necesssarily result from the nature of the contract.” Savage, J., 7 Wend. 80; 13 Ib. 92; 8 B. M. 634.
Every part of the policy must be considered, and such a construction put upon it as Will harmonize and give effect to *all its provisions. The conditions annexed are, undeniably, a part of this policy, and are inserted “ to explain the rights and obligations of the parties.” By the first of these, the applicant is required to state the construction and materials of his building, by whom it is occupied, whether as a private dwelling or otherwise, its situation in respect to contiguous buildings, and whether any manufactory is carried on, in or about it, and this is all that he is required to state; and it all belongs to a description of the premises, such as the agents of the company, or any one else, could make on actual view, and constitutes, both in the legal and ordinary sense, a survey of them.
By the fourth condition, the company say to the applicant, if you make this “ description,” and it is false, your policy is void; but if *408 our agents make it, we will be responsible for its correctness: and by the seventeenth, the applicant consents, that this “ survey and •description ” shall be a part of the policy; and if made by him, that lie will warrant its truth. In all this, there is no complaint that it was not true. But other matters, not required to be stated by anything contained in the policy, or the conditions annexed, or descriptive of the premises, were inserted upon the paper headed “ Survey;” and the truth of these, also, is claimed to be warranted. And why ? Simply because it is referred to “ for a more particular description of'the premises,” and for that purpose alone made part of the policy. It is now sought to extend it beyond the declared purpose, and make it effective to incorporate additional stipulations into the contract. This we think altogether inadmissible, and unsupported by any authority whatever. In the case of Trench v. The Chenango Insurance Company, 7 Hill, 122, the policy contained this clause : “ Eeference being had to the said J. and T. Trench, for a more particular description, and the conditions annexed, as forming part of this policy.” The court held the annexed conditions a part of the contract, but the application not. They say: “ That is referred to for the mere purpose of describing and identifying the property insured, *and not to incorporate its statements into the policy, as parts thereof.”
In this connection, the case of Jennings v. The Chenango Insurance Company, 2 Denio, 75, is very much pressed upon our attention, as containing an able exposition of this branch of the law, as acknowledged and enforced by the courts of New York. The opinion of Judge Jewett is certainly distinguished for perspicuity, and the case for an application of the severest rules of marine insurance to a fire policy; operating so harshly, as to compel the judge to “ doubt whether the intentions of the parties, and the interests of justice, were duly regarded, in the establishment of the rule, that matters of mere description, should, in this class of contracts, be considered an express warranty, without regard to their materiality, in respect to the risk.” But that the opinion, throughout, is concurred in by the courts of that state, I have very good reason to doubt. It was certainly questioned by Jones, J., in delivering the opinion of the Court of Appeals, in Gates v. Madison Insurance Company, 2 Com. 48; and if it was not entirely overruled by his own opinion, upon this last case again coming up (1 Selden, 469), it was saved upon a distinction too subtle, I must think, for practical purposes. But if *409 neceived in its full extent, it contains nothing opposed to our con•clusion. The misstatements, in that case, related to the situation of the building in respect to other buildings, and to the purpose for which it was occupied—both of which were required to be truly ■stated by the conditions annexed and made part of the policy, and the consequence of a failure was declared to be a forfeiture of all rights under it; while in this case, the conditions annexed require no statement as to the disposal of the ashes, or the state of 'the title; -and the clauses of forfeiture and of warranty extend only to those particulars of “ survey and description ” which are required to be .set forth in the application. In that case, the court say, “ the mistake was proved to have been the consequence, either of the ignorance, carelessness, or bad faith of the agent of the defendants;” .and yet, they would not allow *this fact to restrain those provisions of the policy, or to be shown by parol evidence. In this, the case is directly at issue with the decision of the Supreme Court ■of Pennsylvania, to which I have referred; but we have not found it necessary to decide the question.
If the answers in this case are to be treated as representations, it is not denied that the evidence was admissible to rebut the presumption of fraud, or misleading, which might otherwise arise; and it can not be doubted that it most effectually did it. A very different question might be presented upon policies issued by mu-dual insurance companies, restrained by charter provisions and by laws, to which the assured is deemed to be a party, and where the premium is secured upon the property. Phillips v. Knox Mutual Insurance Co., 20 Ohio, 174.
The charge as to the concealment of the previous fire, is also objected to, because it directed the jury, in determining the materiality of the fact, to inquire for and be governed by the true cause of the fire, and not the belief of Harmer as to the cause. So far as his belief was of any value, as an admission of the true cause, it went to the jury for what it was worth, and the company had the full benefit of it; and if his belief corresponded with the true cause, of course no injury was done them. If it did not, of what importance was his belief or suspicion to them? Before the duty of disclosure arises, the fact must be material to the risk; that is, it must increase the chances of loss. If it was not in truth material, could his erroneous suspicions make it so? It was no't pretended that he knew the cause, or had received any information, *410 cither true or false, which he failed to communicate. Under such circumstances the marine rule is, that “the assured is not bound to-communicate his own expectations, and opinions, and speculations-upon facts.” 1 Phil, on Ins. 315. The balance of the instruction upon the subject of concealment, is not complained of; but, although not necessary to the decision of the case, I can not let it pass without expressing my decided conviction that the law was *laid down too favorably to the underwriter and too strongly against the assured. It is not now true, whatever may be thought of the older authorities, that there is no difference in this-respect between marine and fire insurance; nor that a failure to disclose every fact material to the risk, upon which information is not asked for, or suppressed with a fraudulent intent, will avoid a policy of the latter description. The reason of the rule, and the-policy in which it was founded, in its application to marine risks, entirely fail when applied to fire policies. In the former, the subject of insurance is generally beyond the reach, and not ojten to-the inspection of the underwriter, often in distant ports or upon the high seas, and the peculiar perils to which it may be exposed, too numerous to be anticipated or inquired about, known only to-the owners and those in their employ; while-in the latter, it is, or may be, seen and inspected before the risk is assumed, and its construction, situation, and ordinary hazards, as well appreciated by the underwriter as the owner. In marine insurance, the underwriter, from the very necessities of his undertaking, is obliged to-rely upon the assured, and has therefore the right to exact a full disclosure of all the facts known to him, which may in any way affect the risk to be assumed. But in fire insurance, no such necessity for reliance exists, and if the underwriter assumes the-risk without taking the trouble to either examine or inquire, he-can not very well, in the absence of all fraud, complain that it. turns out to be greater than he anticipated. And -so are the latest and best authorities. Mr. Angelí (Ang. on Ins. 209) says: “ The-strictness and nicety required in questions arising on policies of marine insurance, are not, to their full extent, applicable to policies-of fire insurance: the former being entered into by the underwriter, almost exclusively on the statements and information given-by the assured himself; in the latter, the underwriters assume the-risk on the knowledge acquired by an actual survey and examination made by themselves, and not on representations coming from *411 the assured.” In Burritt v. The Saratoga Ins. Co., 5 Hill, 192, Bronson, J., *after stating the rule applied to marine polieies, says: “ This doctrine can not be applicable, at least not in its full extent, to policies against fire. If a man is content to insure my house without taking the trouble to inquire of what material it is constructed, how it is situated in reference to other buildings, or to what uses it is applied, he has no ground for complaint that the hazard proves to be greater than he had anticipated, unless I am chargeable with some misrepresentation concerning the nature or-extent of the risk.”
In Clark v. Manufacturers’ Insurance Co., 8 How. 235, the insurance was upon a cotton-factory, and one question was as to the use of lamps in the picker-room. The Supreme Court of the United States held, that “if no representations were made or asked, it would not be the duty of the insured to make known the fact that lamps-were used in the picker-room, although the risk might have been thereby increased, unless the use of them in that way was unusual.” Justice Woodbury, in delivering the opinion of the court, says : “As to the ordinary risks connected with the property insured, if no-representations whatever are asked or given, the insurer must be supposed to assume them; and if he acts without inquiry anywhere concerning them, seems quite as negligent as the insured, who is-silent when not requested to speak.” And finally, the Court of Appeals in New York, in the case of Dates v. The Madison Insurance Company, 1 Selden, 469, Judge Jewett delivering the opinion, has-held, that in the absence of special provisions in the policy relating to the disclosure of facts material to the risk, all that is required of the insured is, that he shall not misrepresent or designedly conceal any such facts, and that he answer fully and in good faith, all inquiries-addressed to him by the insurer.
This, I confess, seems to me the true rule; perhaps, with the qualification more distinctly indicated by the Supreme Court of the-United States, that the insured does not withhold information of such unusual and extraordinary circumstances of peril to the property, as could not, with reasonable diligence, be discovered by the-insurer, or reasonably anticipated *by him, as a foundation for specific inquiries. As-this is not necessary to the decision of the case, I express it but as my own opinion, and I am led to do so, from being now satisfied that I expressed an erroneous opinion at the circuit, by adhering too closely to the doctrine of marine insur *412 .anee, in a point where the reason of that rule does not apply. See also Holmes v. Charlestown Insurance Co., 10 Met. 211, 114; 2 Harris (Pa.), 393; 18 Pick. 419.
4. The tobacco covered by policy No. 75, wds claimed to have been owned by the plaintiff below, and one Eowly, in partnership; .and the jury were charged, that although they should find such to have been the fact, the plaintiff would nevertheless be entitled to recover the value of his interest in the;tobacco burnt, not exceeding the amount insured. This charge is objected to, although it is admitted the decided weight of authority is, that the nature or amount of the interest, held by the assured in the property at risk, in the .absence of specific inquiries, need not be communicated to the in■.surer. Such is not only the weight of authority, but I know not where it has ever been doubted, except in the case of Columbia Insurance Co. v. Lawrence, 2 Pet. 25.
It is “ abundantly well settled, that an insurance effected against loss by fire, will entitle the assured, in case of loss, to recover, upon the proof of any interest in the subject-matter insured, however indirect; and it is, in general, sufficient if the subject-matter of the insurance and the nature of the risk are set forth in the policy, without any representation of the nature or character of the inter■est for which the insurance is intended as a protection.” Angelí on Insurance, 218, sec. 182; 1 Phil, on Ins. 354; Strong v. Manufacturers’ Insurance Co., 10 Pick. 40; Fletcher v. Com. Insurance Co., 18 Pick. 419; Tyler v. Ætna Insurance Co., 12 Wend. 507; Smith v. Bowditch, 6 Cush. 448; Turner v. Burrows, 5 Wend. 546; Lock v. North American Insurance Co., 13 Mass. 61. But it is said, he is represented as the sole owner in the policy. The expression is, “ his cstock of tobacco.”
If the cases I have cited are examined, it will be found *that ■the assertion of exclusive ownership in many of them is much more positive than in this; and yet in no one of them was this objection allowed to prevail. They all seem to proceed upon the principle, equally .applicable here, that such expressions are only intended to identify .and describe the property insured, and not to furnish information, ■or stipulate as to the state of the title or interest of the assured.
III. Did the court err in overruling the motion for a new trial ? ,So far as the reasons in support of this motion relate to the ruling ■of the court in receiving or rejecting testimony, and in the charge .to the jury, they have already been disposed of. It is claimed, *413 however, that the verdict is not supported by the evidence; that the fire of the morning before was a material fact; that the ashoswere not generally and usually thrown out; that gunpowder was kept upon the premises for sale, in violation of the eighth condition annexed to the policy; and that the preliminary proofs wore defective. Upon all these points, we are not only satisfied that the verdict is not decidedly against the weight of evidence, but think it well supported by it. That the previous fire arose from depositing the ashes in the box is perfectly manifest; and equally so, that it was not a continuing cause of danger: and we can not think, that the use of a few of the ashes for a domestic purpose-connected with the occupancy of the building, was a substantial variance from the answer given to the question upon that subject. That it would not be so considered by the English courts, even in-case of warranty, is obvious from the cases to which I have alluded ; to which may be added the ease of Gates v. The Madison Ins. Co., 1 Selden, 479, to the same purpose. The eighth condition attached to the policy provides, that “ the keeping of gunpowder, for sale Or on storage, upon or in the premises insured,, without written permission in the policy, shall render it void.” It-was proved that a small quantity of gunpowder belonging to Ilarmer, was in store and for sale before the policy issued, and remained there until the building was destroyed; *but none after that time had been sold or offered for sale. This provision-operated only in the future. That the powder was not on storage, is not only admitted, but has been judicially determined in New York Equitable Ins. Co. v. Langton, 6 Wend. 623. Was it for sale? The jury certainly had no evidence that it was. Keeping-powder upon the premises is one thing, and keeping it for sale, quite another, and much more hazardous. If the company intended to stipulate against the former, they should have expressed themselves to that effect. They have not done so, and we can not incorporate it for them.
The objections to the preliminary proofs were taken for the-first time upon the motion for a new trial. The very unusual-number of questions presented, many of them arising for the first time in this court, has already extended this opinion to such length as to preclude my noticing these objections in detail. Nor* is it necessary. Whatever of merit there might have been in. them, if the assured had been apprised of the nature of the ob *414 Jections, and an opportunity given him to supply the defects, we think they have been waived by the company. After they were rendered, he was distinctly informed that his claim would be determined upon the merits, and the ultimate refusal to pay, after months had elapsed, was placed upon the ground that there was no merit in it. Under such circumstances, the preliminary proof can not be objected to. O’Neil v. Buffalo Ins. Co., 3 Com. 122; Tyloe v. Merchants’ Ins. Co., 9 How. 390; Francis v. Ocean Ins. Co., 6 Cow. 404; Ætna Ins. Co. v. Tyler, 16 Wend. 402.
Upon the whole case, therefore, we can see no substantial reason why the plaintiff below should not have recovered. It was •certainly extraordinary, and well calculated to excite inquiry and perhaps suspicion, that the building should have been twice on •fire within twenty-four hours, and the insurance effected between the fires; but the evidence'removes all suspicion .from the assured •on account of either of them. The first was a pure accident, originating in ^forgetfulness; and the last was caused by the burning of a steam saw-mill in the vicinity, with which he had no concern.
We have been very earnestly pressed with the importance of •making our decisions upon questions of insurance conform to those in other states; and the opinion is expressed, that the questions involved in this case “ lie at the foundation of any insurance, except at • extravagant rates.” We know of no conflict between the decision we make, and any that has been made elsewhere. But the argument assumes a uniformity in other states that does not exist. Upon some questions, we could not follow them all, if we made the attempt. We choose rather to read and consider the reasons that may be advanced by other courts, with deference to their superior wisdom and learning, and in the end be governed by what we consider sound principles and substantial justice. I have no idea that the doctrine to which I have given my individual approval, is opposed to the true interest of honest underwriters. If •it requires of them more vigilance and care before risks are assumed, it relieves them in the same proportion from the consequences of ill-advised undertakings, which always make á large item in their losses. But whether profitable to them or not, can make no differ■cncc, if it is founded in good reason and sound policy. While I •would go as far as any case has ever gone, to protect them from fraud and imposition, and would hold the assured to the strictest .accountability, where'confidence was necessarily reposed in him, I *415 Rave do hesitation in saying, if the shrewd and intelligent are only -to obtain insurance at low rates, by allowing underwriters to deprive ■others of the indemnity upon which they have honestly relied, upon technicalities or their own negligence, that the sacrifice demanded is much greater than the object to be attained.
We are all of opinion that the judgment of the district court should be affirmed.